Roschak et ux., Appellants, v. Vulcan Iron Works.

Argued March 5, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH and ROSS, JJ.

*Roger J. Dever,* for appellants.

*James P. Harris,* for appellee.

OPINION BY DITHRICH, J., April 26, 1945:

In this workmen's compensation case the claim petitions were filed under the provisions of the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS Sec. 1201. The referee found that the claimant-decedent's total disability and subsequent death were caused by anthraco-silicosis, but disallowed compensation on the ground that notice of disability was not given the defendant within the time limit prescribed by the act. The board concluded that notice of disability was given within proper time and awarded compensation. On appeal to the court of common pleas, the action of the board was reversed and judgment was entered for the defendant. This appeal followed.

Edmund Roschak, the claimant-decedent, was employed by the defendant, Vulcan Iron Works, from April 7, 1936, to April 2, 1941, as a chipper in the foundry. His occupation required him to work on steel castings, chipping off the silica sand and cutting

off the scrapings. The foundry was always very dusty from sand blasting, grinding and chipping, and the floor was always covered with sand. On April 2, 1941, he discontinued work because of a cold. Six days later, April 8, 1941, after having been examined by Dr. Kavanaugh, he sent a written notice to the defendant's superintendent stating that he would "...... be absent from (his) work for an indefinite period on account of a certain illness." Enclosed with this notice was a note from Dr. Kavanaugh certifying: "that Edmund Roschak is ill and under my care since April 1, 1941. He will be unable to work until a future date." At Dr. Kavanaugh's direction, Dr. Boyle took X-rays and in his report of March 29, 1941, indicated that Roschak had an advanced pulmonary tuberculosis. On May 10, 1941, he was admitted to the Mount Alto Sanitarium where he remained until December 12, 1941. On admission to the Sanitarium, the diagnosis after X-ray was a far advanced pulmonary tuberculosis. It was not until the early part of November, 1941, that Dr. Pantaloni, his attending physician at the Sanitarium, told him that he had silicosis. On November 12, 1941, he filed his claim petition alleging total disability as a result of anthraco-silicosis. An X-ray of November 24, 1941, indicated a third stage of pneumoconiosis, but at that time there was no active tuberculosis. Dr. Bixby examined him on February 19, 1942, and diagnosed his condition as anthraco-silicosis with an associated pulmonary tuberculosis. Roschak died on March 5, 1942, survived by his widow and a son two years old. His widow filed her claim petition on April 27, 1942, alleging death as a primary result of anthraco-silicosis. It was agreed that both petitions be tried at the same time and the testimony taken applies to both.

The Occupational Disease Act of 1939, P. L. 566, Sec. 301(d) and (e), 77 PS Sec. 1401, provides:

"(d) Compensation for silicosis or anthraco-silicosis, and asbestosis, shall be paid only when it is shown that

the employe has had an aggregate employment of at least four years in the Commonwealth of Pennsylvania, during a period of eight years next preceding the date of disability, in an occupation having a silica or asbestos hazard.

"(e) Compensation shall not be payable for partial disability due to silicosis, anthraco-silicosis, or asbestosis. Compensation shall be payable, as otherwise provided in this act, for total disability or death caused solely (as definitely distinguished from a contributory or accelerating cause) by silicosis, anthraco-silicosis, or asbestosis, or by silicosis, anthraco-silicosis, or asbestosis, when accompanied by active pulmonary tuberculosis."

The decedent was employed by the defendant for almost five years in an occupation having a silica hazard. The referee found as a fact that his disability and death were "predominantly" caused by anthraco-silicosis. There is ample competent evidence in the record to sustain this finding. Dr. Bixby testified: "Q. Would you say from this picture that anthraco-silicosis was the prime factor in this man's disability and death? A. I believe it played a very important part in his death. I believe by the time I saw him in February, 1942, that the tuberculosis, was, played a very small part in his disability. Q. What was playing the principal or major part? A. My belief is that the anthraco-silicosis was the principal cause of his disability." And again Dr. Bixby testified: "Q. Indeed, you did know something about this case; which of the two elements in your opinion was the predominant factor, the tuberculosis or the anthra-silicosis? A. In my opinion when I saw him in February I believed that the anthra-silicosis was the predominant factor."

"The Occupational Disease Compensation Acts are even more limited than the Workmen's Compensation Acts as respects disability or death resulting from silicosis, for both the Act of 1937 and the Act of 1939 agree

in the provision that in order to be compensable the total disability or death must be *caused* 'primarily' or 'solely'—'as definitely distinguished from a contributory or accelerating cause'—by silicosis.": *Stauffer v. Hubley Mfg. Co.*, 151 Pa. Superior Ct. 322, 328, 30 A. 2d 370. We think there is sufficient medical testimony to bring this case within the narrow limits of the act. The decedent's total disability and death were caused "primarily" or "solely" by anthraco-silicosis accompanied by active pulmonary tuberculosis.

The question raised on this appeal is whether or not notice of disability was given within the proper time. This precise question has not heretofore been decided by the appellate courts of this state, although there are several decisions interpreting the corresponding sections of the Workmen's Compensation Act. The Workmen's Compensation Act of 1915, P. L. 736, Sec. 311, as amended, 1927 P. L. 186, Sec. 3, 1937 P. L. 1552, Sec. 1, 1939 P. L. 520, Sec. 1, 77 PS Sec. 631, provides: "Unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within fourteen days after the accident, no compensation shall be due until such notice be given, and, unless such notice be given within ninety days after the occurrence of the injury, no compensation shall be allowed." This section has repeatedly been held to be mandatory. "Under the provisions of the statute, which are mandatory, no discretion may be exercised by extending the time in which a notice must be served. If it is not given within ninety days from the date of the accident, the omission is fatal to a claim: Walatka v. Levin, 100 Pa. Superior Ct. 489; Dorsch v. Fisher Scientific Co. et al., 136 Pa. Superior Ct. 197, 7 A. 2d 604": *Beck v. Franklin Glass Corp.*, 136 Pa. Superior Ct. 204, 208, 7 A. 2d 600.

The parallel section in the Occupational Disease Act, supra, Sec. 311, 77 PS Sec. 1411, provides: "Unless the

employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice of disability to the employer liable for compensation under this article, within fourteen days after the disability begins, no compensation shall be due until such notice be given, and unless such notice be given within ninety days after the beginning of disability no compensation shall be allowed." The two provisions pertaining to the matter of notice are almost identical. The question now before us is whether they are to be given the same construction and interpretation.

The difference in these two sections lies in the point of time from whence the period of ninety days is computed. In the Workmen's Compensation Act, the time is computed from the date of the "accident" and "injury"; in the Occupational Disease Act, from the date the "disability begins" and "the beginning of the disability." In the former, the time which starts the running of the statute of limitations is easily fixed; in the latter it is much more difficult. On this subject, Corpus Juris says: "An occupational disease is not an injury by accident, and an injury by accident is not an occupational disease; an accident is distinguished from an occupational disease in that the former rises from a definite event, the time and place of which can be fixed, while the latter develops gradually over a long period of time": 71 C. J. 600, Sec. 357. An accident or injury is a definite happening or occurrence or event of which the employee is almost invariably aware. An occupational disease is latent and insidious and the resultant disability is often difficult to determine. It is apparent, then, that the difference between the relevant provisions of the two acts is fundamental and basic. In construing the Occupational Disease Act, the problem devolves to one of ascertaining the point of time at which the disability begins.

The difficulty in ascertaining the exact point of time, at which the occupational disease causes the disability

to begin, becomes obvious from a review of the facts in the instant case. The decedent left work because of a cold. He immediately placed himself under the care of a physician. Within a week, he notified his employer that he would be absent on account of a "certain" illness. He submitted himself for examination and to have X-rays taken. On advice of his physician he entered a sanatarium where he remained for over six months. The first suggestion of an occupational disease was made to him seven months after he discontinued work. The referee made the following finding of fact: "17. The decedent was not aware of the fact that he had silicosis until about November or December of 1941. We further find that at the time the written notice of April 8, 1941, was given to the defendant's superintendent, the decedent was not aware of the fact that he was suffering from silicosis." As soon as he learned of his true condition, he filed his claim petition. What more could he have possibly done? He was completely dependent upon the advice of his physicians. The symptoms which manifested themselves were not peculiar to the disease of silicosis. His condition was complicated by another disease with like symptoms which delayed the true diagnosis. The decedent had no knowledge of his true condition until he was properly diagnosed. And immediately upon learning of the facts, he acted in accordance with the law.

The case of *Bremner et al. v. Març Eidlitz & Son, Inc. et al.*, 118 Conn. 666, 174 A. 172, presents a very similar set of facts. Compensation was denied the claimant because he had failed to give timely notice of the disease of which he had no knowledge until the statute of limitations had run. Speaking on this point, the Connecticut Court said through Chief Justice MALTBIE: "But to whom must the symptom so manifest itself? Ordinarily the law does not give a right or impose a liability based upon knowledge, unless it be the knowledge of the particular person whose right or liability is

in question. Here the notice which must be given if compensation is to be awarded an employee clearly must be one given by him or by some one in his behalf; and the risk of loss, if it be not given, is personal to him. This very forcibly suggests that the manifestation of a symptom of an occupational disease which sets running the time within which notice is to be given must mean its manifestation to the employee claiming compensation." Under the terms of the Connecticut statute, the time for giving notice begins to run from the "first manifestation of a symptom of the occupational disease." Under our statute, the time begins to run from the "beginning of disability." If we were to paraphrase the construction put on its statute by the Connecticut Court, then our statute of limitations would begin to run from the time the employee is disabled and definitely *knows* he is disabled *by the occupational disease.*

The same question was raised in the case of *Blassingame et al. v. Southern Asbestos Co. et al.,* 7 S. E. 2d 478, 217 N. C. 223. The North Carolina Occupational Disease Act, Pub. Laws 1929, c. 120, Sec. 50½(o), as added by Pub. Laws 1935, c. 123, provides that written notice must be given "of the first distinct manifestation of an occupational disease" within thirty days, and in case of death, within ninety days. The employee died from asbestosis, but his widow was not informed of the cause of death until she received an autopsy report more than ninety days after his death. She immediately filed her claim and it was sustained, the court saying: "Thus it will be seen that it was humanly impossible for the widow to have given notice of such death (death resulting from asbestosis) within ninety days after the death. To construe this section as contended by the defendants would be to deny the benefits conferred by the Act in this and all similar cases. The context of the Compensation Act does not favor such a strained or technical construction. The cause of

deceased's death could only be ascertained by autopsy, as above set forth, and notice was given within ninety days after discovery and action brought within one year." The court quoted from the Industrial Commission: "The Commission set forth 'The deceased had been employed in the asbestos industry in North Carolina almost continuously since 1925. For some time before his death and during his last illness he had all the characteristic symptoms of a true asbestosis, but no doctor had so diagnosed it and told him; therefore, the deceased did not have a "distinct manifestation" as provided for in Section 50½(o). The Commission has held in several cases against the Standard Mineral Company that the "first distinct manifestation" is when the employee is told by competent medical doctors that he has asbestosis or silicosis. No claim for compensation could be filed until there was a diagnosis of asbestosis. The first diagnosis of asbestosis was the autopsy report.' "

The Pennsylvania Occupational Disease Act, supra, should be given the same liberal interpretation that has been given the Workmen's Compensation Act. The provisions of the Workmen's Compensation Act pertaining to the question of notice of injury are almost identical with the provisions of Section 311 of the Occupational Disease Act, supra. In construing the parallel provisions of the Workmen's Compensation Act. we said in *Uditsky v. Krakovitz,* 133 Pa. Superior Ct. 186, 189, 2 A. 2d 525, speaking through STADTFELD, J.: "Adopting a rule of liberal construction as a guide in construing the provision requiring notice of the injury, we are agreed that claimant has substantially complied with the particular provision. This construction is fully warranted by a broad and liberal construction of the provisions of an act, remedial in character, in order to effectuate its purpose." And in *York v. The State Workmen's Ins. Fund,* 131 Pa. Superior Ct. 496, 200 A. 230, we held that the Workmens Compensation Act con-

templates liberality, not only in the admission of evidence, but also in the inferences to be drawn therefrom, and that in borderline cases this court will endeavor to carry out the benevolent object of the Workmen's Compensation Act by resolving doubts in favor of a claimant. In *Petrovan v. Rockhill Coal & Iron Company*, 130 Pa. Superior Ct. 58, 196 A. 516, we held that a meritorious workmen's compensation claim should not be defeated for technical or theoretical reasons, if possible to avoid such results. That this liberal rule of construction has always applied to the Workmen's Compensation Act clearly appears from the language of the Supreme Court in *Dunn v. Trego*, 279 Pa. 519, 520, 124 A. 174: "We, with most other courts, have from the beginning put a liberal construction on the Workmen's Compensation Act ......" in order to carry out its advanced humane intentions: *Maguire v. James Lees & Sons Co.*, 273 Pa. 86, 88, 116 A. 679.

The rule is universally accepted that statutes like the one under consideration are to be liberally construed in favor of the employee. In other jurisdictions where the same liberal rules of construction have been applied, it has been held: "It cannot have been the intention of the Legislature in this kind of an act to require the impossible. It was manifestly impossible for the employee in this case to tell the employer anything about the disablement which the employee himself did not know ...... An accidental injury is a thing which happens suddenly and occupies a definite point of time. An occupational disease, on the other hand, is generally a gradual, insidious and progressive injury which eventually produces a disability. In cases like the one at bar it is only when the employee is forced to discontinue his employment that there exists a point in time from which it would be possible to begin the tolling of a period of limitation. Madison v. Wedron Silica Co., 352 Ill. 60, 184 N. E. 901. At this time, or within thirty days thereafter, the notice required by the statute

must be given of the facts, if known. What shall be done if the facts are not known is not stated in the act, but, bearing in mind the basic difference between a disease and an accident and the remedial nature of the act, we cannot so construe it as to require the impossible and defeat its very purpose ...... It is thus apparent that the central intent of the Legislature was that such latitude and liberality in the matter of notice might be indulged as would be consistent with due protection of the employer against unjust concealment of claims.": *Raymond v. Industrial Commission et al.*, 354 Ill. 586, 188 N. E. 861. And in *Bonner v. Ind. Accident Commission et al.*, 140 P. 2d 1000, it was held that: "For the purposes of the statute of limitations (formerly, section 11, of the Workmen's Compensation Act; now, sections 5405, 5406 of the Labor Code), the disease of silicosis is not regarded as an injury 'until the employee knows, or when by the exercise of due care and diligence, he is presumed to know, that he has an occupational disease which has progressed to the extent that he is so disabled that the efficiency of his work is appreciably affected thereby.' Argonaut Mining Co. v. Industrial Acc. Comm., 1937, 21 Cal. App. 2d 492, 496, 70 P. 2d 216, 219. The injury thus described may not arise until some time after the employment which proximately caused the injury has ceased. These words found in Marsh v. Industrial Acc. Comm. 1933, 217 Cal. 338, 351, 18 P. 2d 933, 938, 86 A. L. R. 563: ' "From our study of the subject we are brought to the conclusion that in the case of a latent and progressive disease, such as (silicosis), it cannot reasonably be said that the injury dates necessarily from the last day of exposure to a dust-laden atmosphere and that the prescriptive period begins to run from that day. Rather, according to our view, should the date of the injury be deemed the time when the accumulated effects culminate in a disability traceable to the latent disease as the primary cause, and by the exercise of reasonable care

and diligence it is discoverable and apparent that a compensable injury was sustained 'in performance of the duties of the employment ......' " reappear, in part at least, in Giminez v. Industrial Acc. Comm. 1933, 132 Cal. App. 638, 640, 23 P. 2d 425; Argonaut Mining Co. v. Industrial Acc. Comm., supra, 21 Cal. App. 2d 492, 497, 70 P. 2d 216; and Price v. Industrial Acc. Comm., 1935, 9 Cal. App. 2d 213, 215, 49 P. 2d 294, 295. In the Marsh case the employee, whose name identifies the case, quit his employment in February, 1928, for reasons bearing no relation to the disease of silicosis, the symptoms of which did not appear until December 1928. The disease was not identified until a week before his death, February 14, 1930. The application for a death benefit, filed October 20, 1930, was held, under the facts stated, not necessarily barred by the statute, ......"

The cases relied on by the lower court in its opinion and order reversing the action of the board are proper authority requiring strict compliance with the provisions of the Workmen's Compensation Act as to notice in respect of accident or injury. But the weight of authority is clearly on the side of a more liberal interpretation of the corresponding provisions of the Occupational Disease Act as to the date when the statute begins to run in the case of disability resulting from an occupational disease. Were we to rule otherwise, we would be obliged to hold that it was the legislative intent "to require the impossible."

The judgment is reversed and the order of the board reinstated.