Ciabattoni, Appellant, *v.* Birdsboro Steel Foundry & Machine Company.

Argued May 23, 1956. Before STERN, C. J., JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*David B. Skillman,* with him *Mark C. McQuillen,* for appellant.

*John D. Glase,* with him *Stevens & Lee,* for appellees.

*Richard D. Holahan,* Associate Counsel, with him *Ralph H. Behney,* Counsel and *Herbert B. Cohen,* Attorney General, for Commonwealth of Pennsylvania, appellee.

OPINION BY MR. JUSTICE JONES, September 24, 1956:

The claimant's petition for compensation under The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §1201 et seq., was dismissed by the referee on the ground that it was not filed within the time limited therefor by the Act. On exceptions, the compensation board affirmed the referee's action. The claimant appealed from the board's decision to the court of common pleas which reversed in an order remitting the matter to the board for specific findings as to the date when the claimant's total disability *from silicosis* became known or should have been known *to him.* The corporate employer and its insurance carrier at once appealed to the Superior Court from the common pleas court's order, as did also the Commonwealth of Pennsylvania acting on behalf of the State

Workmen's Insurance Board. The Superior Court reversed and entered judgment for the appellants: 179 Pa. Superior Ct. 538, 543, 118 A. 2d 229. We granted an allocatur on the claimant's petition, and the matter is now before us on appeals by the administratrix of the claimant who has died in the meantime.

The referee found ". . . that claimant was totally disabled, as a result of silicosis, on December 22, 1952, and did not file a claim for compensation until January 4, 1954" and ". . . that claimant has not filed his claim petition within the period provided by the Occupational Disease Act, as amended." Section 315 of the Act provides that "In cases of disability all claims for compensation shall be forever barred, unless, within one year after the disability begins, . . . one of the parties shall have filed a petition as provided in article four hereof", which Article provides in Section 403 (a) that "All proceedings before the board or any referee . . . shall be instituted by petition addressed to the board." It was on the basis of these findings that the referee concluded that the claim was filed too late and dismissed the petition.

The claimant contended below, and it is now his personal representative's contention here, that the bar to the claim, as prescribed by Section 315 of the Act, did not commence to run until the claimant knew or should have known that his total disability was due to silicosis. And, there is no evidence in the record to support a finding that the claimant's total disability on December 22, 1952, was *due to silicosis.* That he did become totally disabled on that date is a finding which there is evidence to support. The company's doctor, Dr. Christ, who attended the claimant as his private physician, so testified. But, Dr. Christ did not testify (and the record is barren of any evidence) that

*silicosis* was the cause of the claimant's total disability on December 22, 1952.

The question, then, is whether it is not necessary to do what the court of common pleas did, namely, remand the case for further hearing and consequent finding as to when the claimant's total disability *from silicosis* became an established fact.

Section 315 of the Occupational Disease Act of 1939 is not and, in the circumstances to which it specifically applies, cannot be construed as a legislatively intended statute of repose. The year within which a claim under that Act must be filed runs from the date when the compensable disability, due to the occupational disease, begins and that date is necessarily a variable one depending upon when the pertinent medical diagnosis is competently established *to the knowledge* of the claimant. It follows, therefore, that the prescribed time within which a claim for total disability due to an occupational disease must be filed is a limitation upon the remedy and not upon the substantive right. It is true that Section 315 of the Workmen's Compensation Act of 1915 has long, and uniformly, been held to be a statute of repose. But, the difference between the provisions of Section 315 of the Workmen's Compensation Act and the provision of Section 315 of the Occupational Disease Act is the same as the difference between Sections 311 in the two Acts which, in the main, require that notice of an employee's claim for compensation must be given to the employer within ninety days of the "accident" or "disability", otherwise "no compensation shall be allowed." The legal distinction between the substantially similar provisions of Section 311 of the Workmen's Compensation Act and Section 311 of the Occupational Disease Act was clearly and cogently pointed out in *Roschak v. Vulcan Iron Works*, 157 Pa.

Superior Ct. 227, 232, 42 A. 2d 280. There, the Superior Court found a differing legislative intent between the relatively comparable Sections 311 of the respective Acts. The only difference in the language of the two Sections 311 (and the same is equally true of Sections 315) is that in the Occupational Disease Act it is the "disability" that begins the running of the prescribed period while, under the Workmen's Compensation Act, it is the "accident" and, likewise, it is "the beginning of disability" in the Occupational Disease Act and "the occurrence of the injury" in the Workmen's Compensation Act that starts the running of the notice limitation.

The *Roschak* case was the first time that Section 311 of the Occupational Disease Act had come before an appellate court of this State for interpretation. The employer argued that it should be given the same construction as had uniformly been ascribed to Section 311 of the Workmen's Compensation Act, namely, that the period of limitation for serving notice of the claim was mandatory and not extendable. But, the Superior Court, noting the marked difference between the two Acts in respect of the character of the circumstances to which the period of limitation was made applicable, held that the period within which a compensation claimant, under the Occupational Disease Act, must give notice to his employer as required by Section 311 of that Act begins to run "from the time the employee is disabled and definitely *knows* he is disabled *by the occupational disease.*" In justification of that ruling, we cannot do better than quote what the Superior Court so well said with respect thereto. "In the Workmen's Compensation Act, the time is computed from the date of the 'accident' and 'injury'; in the Occupational Disease Act, from the date the 'disability begins' and 'the

184

beginning of the disability.' In the former, the time which starts the running of the statute of limitations is easily fixed; in the latter it is much more difficult. On this subject, Corpus Juris says: 'An occupational disease is not an injury by accident, and an injury by accident is not an occupational disease; an accident is distinguished from an occupational disease in that the former rises from a definite event, the time and place of which can be fixed, while the latter develops gradually over a long period of time': 71 C.J. 600, Sec. 357. An accident or injury is a definite happening or occurrence or event of which the employee is almost invariably aware. An occupational disease is latent and insidious and the resultant disability is often difficult to determine. It is apparent, then, that the difference between the relevant provisions of the two acts is fundamental and basic. In construing the Occupational Disease Act, the problem devolves to one of ascertaining the point of time at which the disability begins."

We refused an allocatur in the *Roschak* case which forthwith became the leading case in this State on the point involved and has since been either quoted from directly or cited with approval many times: see, e.g., *Nickolay v. Hudson Coal Company,* 164 Pa. Superior Ct. 550, 552, 67 A. 2d 828; *Tracey v. M. & S. Coal Company,* 165 Pa. Superior Ct. 569, 571, 69 A. 2d 184; *Coma v. Hudson Coal Company,* 166 Pa. Superior Ct. 503, 505, 72 A. 2d 604; *Shemanchick v. M. & S. Coal Company, Inc.,* 167 Pa. Superior Ct. 350, 352, 74 A. 2d 764; *Masouskie v. Hammond Coal Company,* 172 Pa. Superior Ct. 409, 410, 94 A. 2d 55; and *Lowe v. American Radiator & Standard Sanitary Corporation,* 178 Pa. Superior Ct. 137, 144, 113 A. 2d 330. Cf., also, *Valent v. Berwind-White Coal Mining Company,* 172 Pa. Superior Ct. 305, 94 A. 2d 197, which was con-

cerned with a widow's claim for the death of her husband from silicosis, the death having occurred more than three years after the husband's last employment: see Section 301 of the Occupational Disease Act of 1939, as amended. Whether the widow's claim for her husband's death from silicosis had been filed timely was the crucial issue, and the answer depended upon whether the deceased husband had, in his lifetime, filed a valid claim for total disability from silicosis. The latter issue was made to depend, in turn, upon when the employee *knew* that he was totally disabled from the occupational disease.

Just as in the *Roschak* case, so also here, "The difficulty in ascertaining the exact point of time, at which the occupational disease causes the disability to begin, becomes obvious from a review of the facts in the instant case." When, by reason of his weakened physical condition, the claimant was forced to abandon his employment on December 22, 1952, the precise nature of his disabling illness was undetermined. It was not until February 5, 1953, that Dr. Bisbing, a specialist in diseases of the lungs who had been called in as a consultant, diagnosed silicosis as the cause of the claimant's total disability as of *that* date. Up to that time Dr. Christ, the company's physician, had been treating the claimant for a cardiac condition exclusively; he never diagnosed silicosis as the primary cause of the claimant's physical disability; nor did he ever treat him for silicosis.[1]

---

[1] In material part, Dr. Christ testified as follows: "Q. Now, finally, after you had taken him to Dr. Rentschler for further x-ray in November, 1952, he did not improve, but became worse? A. Yes, in spite of the cardiac therapy. Q. You were then treating him only for a cardiac condition? A. Yes. Q. Did you at any time then treat him for this condition, dust of the lungs? A. Not of itself. Q. Your

As allegedly precluding a recovery, the defendants rely on the fact that the petition for compensation, which was filed on January 4, 1954, averred that the claimant had become totally disabled from silicosis on December 22, 1952. However, the petition was not introduced in evidence nor was it otherwise made a part of the record. Of itself, it is without evidentiary value. It partakes of the nature of a complaint at law which may be amended in order to make it conform to the actual proofs. Here, the undisputed proof is that it was not medically determined until February 5, 1953, that the claimant's total disability was due to silicosis.

Since the claim petition was filed within a year after the *compensable* disability began, it is unnecessary to consider what effect Act No. 355 of February 28, 1956, which extends to sixteen months the time for filing a claim for compensable occupational disease, would have had had the claimant's total disability from silicosis begun on December 22, 1952. Compare *Agostin v. Pittsburgh Steel Foundry Corp.*, 354 Pa. 543, 549, 47 A. 2d 680.

The judgment is reversed and the record remanded with direction that the order of the court of common pleas be reinstated for further proceeding on the petition not inconsistent with this opinion.

---

treatment was primarily for the heart condition, or relieving the heart condition? A. That is right. Q. Then, finally, as he did not respond, you then referred him to Dr. Bisbing? A. Yes, sir. Q. After you got Dr. Bisbing you first had definite information yourself the man was suffering from silicosis, or silico-tuberculosis? A. Yes, that is my first information that it was a primary lung condition, previously it was all cardiac, with occasional respiratory infections."