## Kilvady v. Commonwealth

*Shire, Bergstein & Caruso,* for appellant.
*M. E. Krober* and *J. Strader,* for appellees.

MIHALICH, *J.,* June 18, 1979—This is an occupational disease appeal from the decision of the

referee and the order of the Pennsylvania Department of Labor and Industry Workmen's Compensation Appeal Board, denying widow's benefits to appellant, Helen D. Kilvady.

Plaintiff-widow, Helen Kilvady, filed a petition under the Pennsylvania Occupational Disease Act, of June 21, 1939, P.L. 566, sec. 101 et seq., as amended, 77 P.S. §1201 et seq., alleging that on January 17, 1972, her husband died from silicosis as a result of being exposed to the hazard of silica while employed by defendant, United States Steel Corporation, at its Donora works.

Plaintiff's husband had left his employment with defendant-corporation on November 8, 1957, when the plant closed; he had been suffering from pulmonary problems prior to the closing and had been treating with Dr. Robert Kleinschmidt, who had diagnosed his problem as one of total disability from pulmonary emphysema.

An autopsy at the time of his death on January 17, 1972, indicated that decedent died from silicosis. The pathologist, however, could not state whether decedent had become totally disabled from silicosis within a four-year period after his separation from his employment.

Decedent's treating physician, Dr. Kleinschmidt, upon review of the autopsy report and the testimony of the pathologist, found that decedent's total and complete physical disability was due to silicosis during the entire period of his observation (commencing July 20, 1957) and beyond, and leading up to his death. The diagnosis of silicosis, although totally unknown until autopsy in decedent's case, was consistent with decedent's clinical course of severe shortness of breath and deteriorating health, complicating tuberculosis, progressive decrease in lung function and finally death. Dr.

Kleinschmidt testified that he never informed decedent that he was suffering from silicosis, even though it could never be eliminated as a diagnostic entity, since the nature and course of the diseases of silicosis and emphysema are similar in nature.

Plaintiff-widow filed exceptions to the referee's findings of fact no. 5, no. 9 and conclusions of law, as follows:

"FIFTH: The decedent sought the services of Dr. Robert Frank Kleinschmidt certified in Internal Medicine and treated the decedent from July 20, 1957 until October 28, 1966, diagnosing his total disability as a result of pulmonary emphysema, glomerulonephritis and hypothyroidism.

"NINTH: Dr. John Mitchell Brandon testified before this Referee under direct and cross-examination and was unable to ascertain if the decedent became totally disabled from silicosis within four years of his separation from an occupational hazard of silica (November 8, 1957).

"(Conclusions of Law)

"SECOND: The claimant being unable to establish that her decedent husband was totally disabled from an occupational disease within a four-year period after his separation from said employment wherein he was exposed to an occupational hazard and the decedent's demise having occurred more than four years after said exposure, the claimant is not entitled to any benefits under the Act."

All of the evidence which has been submitted in this case before the referee was unrefuted medical evidence submitted by plaintiff. The pathologist who performed the autopsy, Dr. John M. Brandon, testified that decedent had died from silicosis. Dr. Brandon did not determine whether decedent had become totally disabled from silicosis within a

four-year period after his separation from his employment. However, Dr. Robert Kleinschmidt, who initially treated decedent, did testify by deposition that decedent was totally disabled due to silicosis during the entire period of his observation, which began on July 20, 1957, and beyond his period of observation and leading up to decedent's death. This medical testimony was admitted into evidence and was competent medical evidence of decedent's condition and cause of death.

The diagnosis of Dr. Kleinschmidt, set forth in finding of fact "Fifth," was the diagnosis made in 1957, and not the opinion given by the doctor in the deposition of April 19, 1976, at a time when all possible diagnostic evidence, including an autopsy, were available to him.

The referee's findings of fact contained no discussion of the evidence presented by the deposition of Dr. Robert F. Kleinschmidt taken April 19, 1976. Further, the Conclusion of Law ignores the doctor's testimony given at the deposition, without explanation by the referee. It is not possible to ascertain from the present findings of fact the reason that Dr. Kleinschmidt's testimony by deposition concerning the cause of total disability and the date of such disability was disregarded.

The Pennsylvania Commonwealth Court in *Workmen's Compensation Appeal Board v. Gutman*, 23 Pa. Commonwealth Ct. 177, 351 A. 2d 326 (1976), remanded the record to the Appeal Board with directions that the referee render a decision including findings, conclusions and "discussion," giving the basis for his finding (and conclusion) that no compensable injury was proved to have been sustained, stating at p. 180: "We do not know whether the referee disregarded this testimony because he believed it to be inadmissible, which it

was not, or whether he simply disbelieved it, which it was within his power to do, or whether he considered it insufficient . . ."

Defendants-appellees, however, contend that setting aside the decision of the Workmen's Compensation Appeal Board and a remand of the record to the board for further hearing and determination would be improper for the reason that the widow's claim is barred by the limitation provision of section 301(c) of the Pennsylvania Occupational Disease Act, 77 P.S. §1401(c), which states:

"Compensation for the occupational diseases enumerated in this act shall be paid only when such occupational disease is peculiar to the occupation or industry in which the employe was engaged and not common to the general population. Wherever compensable disability or death is mentioned as a cause for compensation under this act, it shall mean only compensable disability or death resulting from occupational disease and occurring *within four years after the date of his last employment in such occupation or industry.*" (Emphasis supplied.)

Defendants-appellees contend that since decedent died 15 years after his date of last exposure or employment, the decisions below were correct and the case properly dismissed.

It must be noted that claimant seeks compensation under section 307, 77 P.S. §1407, of the Occupational Disease Act for the "death" of her husband. A claim under section 306 of the act, 77 P.S. §1406, lifetime disability, is distinct from seeking compensation because of the worker's death under section 307. Decedent during his "lifetime" could initiate a disability claim for benefits payable under section 306. The widow's benefits, however, are

payable under section 307; consequently, the defendants-appellees contend that the widow claimant had to prove that decedent's *"death" had occurred within "four years" after the date of his last employment in such occupational industry.* Defendants-appellees erroneously extend the requirement (that the occupational disease occur within four years of the claimant's last employment) to also require that claimant's "death" occur within four years of his last employment.

Section 301(c) of the Occupational Disease Act deals with the "right" to compensation, while section 315 limits the time within which the right to compensation must be "asserted": Moore v. Dodge Steel Co., 206 Pa. Superior Ct. 242, 246, 213 A. 2d 130 (1965). A right to compensation under section 301(c) requires the following elements of proof:

1. An occupational disease;

2. Peculiar *to the occupation or industry in* which the employe was last engaged and not common to the general population;

3. That the occupational "disease" *occurred* within four years after the date of his last employment in such occupation or occupational industry;

4. That the occupational disease *resulted* in a

(a) Disability (section 306 claim)

(b) Death (section 307 claim)

If the claimant can establish these requisite section 301(c) elements of proof, she is entitled to compensation, provided her claim "petition was timely filed" under the provisions of section 315 of the Occupational Disease Act: 77 P.S. §1415.

This court is compelled to conclude that plaintiff-appellant has timely filed her claim petition.

*Although the language of section 315 of the Workmen's Compensation Act is similar to that of section 315 of the Occupational Disease Act, the latter has been held not to be a statute of repose.*

"Section 315 of the Occupational Disease Act of 1939 is not and, in the circumstances to which it specifically applies, cannot be construed as a legislatively intended statute of repose. The year within which a claim under that Act must be filed runs from the date when the compensable disability, due to the occupational disease, begins and that date is necessarily a variable one depending upon when the pertinent medical diagnosis is competently established *to the knowledge* of the claimant. It follows, therefore, that the prescribed time within which a claim for total disability due to an occupational disease must be filed is a limitation upon the remedy and not upon the substantive right." Ciabattoni v. Birdsboro Steel Foundry & Machine Co., 386 Pa. 179, 182, 125 A. 2d 365 (1956). (Emphasis in original.)

The Pennsylvania Supreme Court, in Ciabattoni, supra, recognized that under the Workmen's Compensation Act the time which starts the running of the statute of limitations is easily fixed; but much more difficult under the Occupational Disease Act. The court further cites as controlling authority the case of Roschak v. Vulcan Iron Works, 157 Pa. Superior Ct. 227, 42 A. 2d 280 (1945), for the position that an occupational disease is not an injury by accident, and an injury by accident is not an occupational disease. An accident is distinguished from an occupational disease in that the former rises from a definite event, the time and place of which

can be fixed, but the latter develops gradually over a long period of time. An accident or injury is a definite happening or occurrence or event of which the employe is almost invariably aware. An occupational disease is latent and insidious, and the resultant disability is often difficult to determine. It is apparent then that the difference between the relevant provisions of the two acts is fundamental and basic.

In construing the Occupational Disease Act, the problem devolves to one of ascertaining the point of time at which the disability begins, i.e., whether the widow's claim for her husband's death from silicosis had been filed timely is the crucial issue. This issue is dependent, in turn, upon when the employe knew he was totally disabled from the occupational disease.

If we accept claimant's position in the instant proceeding, then the decedent was never aware he was suffering from an occupational disease for the reason that his condition was diagnosed as chronic emphysema. It was not until an autopsy was performed on decedent that the original physician, who had diagnosed decedent's condition as chronic emphysema, revised his diagnosis that decedent was totally disabled due to silicosis during the entire period of his observation (commencing July 20, 1957) and beyond, leading to his death.

The right of the widow to compensation under the Pennsylvania Occupational Disease Act is a separate cause of action, independent of, and not derivative from, the right of the deceased employe. A failure of the decedent to petition for or receive compensation does not bar his widow's right if she files for claim within the statutory period *after his death:* Moore v. Dodge Steel Co., supra. Consequently, claimant in the instant proceeding

would be entitled to compensation upon establishing the above-mentioned elements of proof under section 301(c) and her timely filing of an application for benefits within 16 months of the decedent's death. The courts have consistently adopted a liberal construction as a guide in workmen's compensation and occupational disease cases to effect the remedial purposes of the acts: Roschak v. Vulcan Iron Works, supra; Moore v. Dodge Steel Co., supra.

Counsel for claimant persuasively argues that she has offered proof that her husband was suffering from an occupational disease, which occurred within four years after the date of his last employment for United States Steel with a resultant compensable disability and death within the mandate of section 301(c). Decedent's lack of knowledge during his lifetime of the existence of such an occupational disease further supports the widow's claim.

The court recognizes that there is a practical limit to the amounts of benefits employers and the public can provide for death or disability resulting from occupational diseases. This limit must be clearly established by the legislature, possessed of all the facts, not by the court. Furthermore, it has always been held by our appellate courts that we adopt a liberal construction as the guide in workmen's compensation and occupational disease cases to effectuate the remedial purposes of the acts.

In accordance with the foregoing, the court issues the order dated and filed of even date herewith.

## ORDER

And now, June 18, 1979, in accordance with the

opinion dated and filed of even date herewith, it is hereby ordered, adjudged and decreed that the record of this proceeding be remanded to the Appeal Board with directions that the referee render a decision, including findings of fact, conclusions of law and discussion, giving the basis for his findings (and conclusion) that no compensable injury was proved to have been sustained, giving due regard to this court's construction of section 301(c) of the Occupational Disease Act.