771 A.2d 1246

**Joan SELL, Appellant,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (LNP Engineering), Appellees.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 2000.

Decided May 22, 2001.

Flaherty, C.J., concurred and filed opinion in which Saylor, J., joined.

Zappala, J., filed dissenting opinion.

Marc S. Jacobs, Philadelphia, for Joan Sell.

Janet M. Tarczy, Carlisle, James A. Holzman, Harrisburg, for Worker's Compensation Appeal Board.

Jeffrey W. Meehan, for LNP Engineering.

Before FLAHERTY, C.J., ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## OPINION

CAPPY, Justice.

In 77 P.S. § 631, Pennsylvania's Workers' Compensation Act (the "Act"), 77 P.S. §§ 1 *et seq.*, states that an employee must notify her employer of a work-related injury within 120 days of its occurrence. 77 P.S. § 631. We granted allocatur in this case to consider application of the "discovery rule" to § 631's notice period. We conclude that the substantial evidence of record supports the Workers' Compensation Judge's ("WCJ") finding that the Appellant, Joan Sell ("Sell"), neither knew, nor had reason to know, that she sustained an injury that was possibly related to her employment prior to receiving a medical diagnosis to that effect. Accordingly, we reverse the order of the Commonwealth Court.

In 1979, Sell began her employment as a production worker with the Appellee, LNP Engineering, a company that made and sold plastic pellets. In 1988, Sell became a quality control technician, and tested samples from various manufacturing lines to insure that they conformed to specification. In performance of her testing duties, Sell was in daily and direct contact with hot fumes and dust from the processing of a number of chemicals, including formaldehyde.

Sell was a smoker. She started to smoke at fifteen years of age, averaging one pack of cigarettes per day for some 40 years. Ultimately, she managed to reduce her smoking to about ten cigarettes a day.

In the 1980's, Sell experienced sore throats, coughing, tightness in her chest, and a runny nose, and about once a year, contracted bronchitis. Sell observed that her energy level

would decrease and respiratory difficulties would increase during the work week, and that over the weekends, she would feel better. Sell told her co-workers that she thought that her health problems might be connected to her job, but, lacking proof, she did not share this thought with a supervisor. In April of 1992, Sell was diagnosed with double pneumonia.

Sell went to work on Friday, November 20, 1992. On Saturday, she felt tired and ill. While she felt somewhat improved on Sunday, by the morning of Monday, November 23, 1992, Sell had great difficulty breathing. She went immediately to the hospital and was admitted as an inpatient. Sell's physicians told her that she had emphysema, a chronic obstructive pulmonary disease that interferes with normal breathing. The cause of the emphysema, however, was not discussed.

Upon discharge from the hospital on November 25, 1992, Sell did not return to LNP Engineering. At this time, she began to search for a physician with knowledge of the chemicals and dust in her work environment. Despite her efforts, Sell could not find such a physician, and contacted the American Lung Association for help. Finally, in August, 1993, Sell located Dr. John R. Cohn, an allergist. Dr. Cohn treated Sell for her emphysema, and told her that exposure to elevated formaldehyde concentrations at work had exacerbated her illness.

On August 31, 1993, Dr. Cohn provided Sell with a note that stated that she was able to return to work, but with "cautious exposure to formaldehyde." On or about that same day, Sell gave the note to Ann Stokes, the head of personnel of LNP Engineering. At the same time, Sell informed Ms. Stokes that she was injured at work and explained how formaldehyde had affected her. Sell also described the difficulty she encountered in locating a physician with knowledge of the chemical.

Thereafter, Dr. Cohn sent a letter to LNP Engineering advising the company that Sell was eager to return to work, and could do so if she was given a special respirator. LNP

Engineering, however, declined to give Sell work within her medical restrictions, and dismissed her.

On November 9, 1993, Sell was evaluated by Dr. Jessica Herzstein, a certified specialist in occupational medicine. Dr. Herzstein determined that Sell's emphysema was aggravated by the formaldehyde and other chemicals with which she came into contact at work, and like Dr. Cohn, believed that Sell could not return to her job without respiratory protection.

On January 12, 1994, Sell sent Dr. Herzstein's medical report to LNP Engineering, and formally notified the company that she suffered a disabling occupational injury as a result of repetitive exposure to chemicals at work. LNP Engineering issued a Notice of Compensation Denial on February 1, 1994.

On March 21, 1994, Sell filed a Claim Petition for Workers' Compensation under the general injury section of the Act, 77 P.S. 411(1), alleging that exposure to chemical irritants, including formaldehyde, while in the course of her employment at LNP Engineering caused an aggravation of her chronic obstructive lung disease, and that she was disabled from working as of November 23, 1992. For purposes of establishing that she had satisfied the notice requirement of 77 P.S. § 631, Sell further alleged that she notified LNP Engineering of her work-related injury on August 31, 1993.[1] LNP Engineering filed an Answer denying all of Sell's allegations.

1. Section 631 states:

 § 631. Knowledge of employer; notice of injury to employer; time for giving notice; exception

 Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe...shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section

Several hearings were held, during which the WCJ received testimony from Sell, LNP Engineering's representative, and the deposition testimony of each party's medical expert. Dr. Herzstein, Sell's expert, testified that Sell suffered from two conditions: emphysema and an exacerbation of the disease. Dr. Herzstein explained that emphysema is a degenerative disease that develops over time after many years of assault on lung tissues, often from cigarette smoking. She described Sell's emphysema as moderately severe, without any clear reversible component. Dr. Herzstein testified that the formaldehyde and other chemical irritants at LNP Engineering to which Sell was exposed aggravated the emphysema, triggering additional airway inflammation, bronchospasm, and a tightening of already narrowed airways. According to Dr. Herzstein, the aggravation of the emphysema was progressive and could also become chronic over time. Dr. Herzstein saw the waxing and waning of Sell's symptoms relative to her work schedule as supportive of her opinion. Dr. Herzstein further opined that Sell could not return to a work environment where she was exposed to odors, fumes and respiratory irritants. Dr. Paul Epstein, LNP Engineering's expert, testified that Sell suffered from only one ailment, emphysema caused by smoking, and opined that she could resume her job. For Dr. Epstein, Sell's symptom pattern meant only that she was tired and in need of rest by the time the work week ended.

On June 30, 1997, the WCJ circulated a decision in which he accepted Sell's testimony and that of her medical expert as credible and persuasive. The WCJ concluded that Sell established that she suffered an aggravation of her underlying chronic obstructive lung disease due to exposure to chemical irritants at work and that the aggravation to her underlying condition substantially contributed to her inability to return to her prior work environment.

As to the issue of notice, the WCJ found that Sell notified LNP Engineering on August 31, 1993 that her work environ-

means, in cases of occupational disease, disability resulting from occupational disease.

77 P.S. § 631.

ment caused her injury when she gave the company Dr. Cohn's note. Further, the WCJ found Sell's notice to be timely under 77 P.S. § 631 since she did not know nor did she have reason to know prior to receiving the note from Dr. Cohn on August 31, 1993 that her respiratory ailment was affected by the chemicals at work. Accordingly, the WCJ granted Sell's Claim Petition.

LNP Engineering appealed the WCJ's decision to the Workers' Compensation Appeal Board (the "Board"). The Board reversed on the issue of notice, concluding that the substantial evidence did not support the WCJ's finding that prior to August 31, 1993, Sell did not have reason to know of the causal relationship between her emphysema and employment. The Board found instead that Sell "knew or should have known of the nature of her injury and its relationship to her employment on November 23, 1992 when she was hospitalized." Thus, the Board reasoned, "[Sell] had 120 days from that date to give [LNP Engineering] notice. She did not provide notice until August of 1993, beyond the 120–day statutory notice period, and therefore, she was barred from receiving compensation for her work injury."

Sell appealed to Commonwealth Court. In an unpublished opinion, a divided panel of the court affirmed the Board. In reaching its decision, the court focused on the same portions of the record that the Board found dispositive—Sell's testimony regarding her suspicions of the harmful effects of formaldehyde and her testimony that during the time she functioned as a quality control technician, her respiratory symptoms would worsen during the work week, and improve on the weekends. Observing that Sell's symptom pattern, which the WCJ included in one of his findings, "conflicts with [his] other salient finding that Sell did not know or have reason to know prior to August 31, 1993 that she suffered a work-related aggravation of her underlying respiratory illness", the court concluded that the substantial, competent evidence credited by the WCJ "merely supports the conclusion that Sell should have given notice to [LNP Engineering] of the work-related aggravation of her underlying emphysema within 120 days from her last

day of work in November 1992." Accordingly, the court held that the record evidence did not support the WCJ's finding that Sell gave timely notice to LNP Engineering.[2] This appeal followed.

■ Our discussion begins with the rules that govern our review. In workers' compensation cases, a reviewing court must affirm the adjudication below, unless it finds that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed or that any necessary finding of fact was not supported by substantial evidence of record. 2 Pa. C.S. § 704; *Volterano v. Workmen's Compensation Appeal Board (Traveler's Ins. Co., et al.)*, 536 Pa.335, 639 A.2d 453, 455–56 (1994).

■ The issue presented as to the timeliness of Sell's notice under 77 P.S. § 631 is a question of fact. *See Katz v. The Evening Bulletin*, 485 Pa. 536, 403 A.2d 518, 519 (1979). Where, as here, the Board has taken no additional testimony, the WCJ is the ultimate fact-finder. *Id.* Thus, our present task is to determine whether the record contains substantial evidence in support of the WCJ's finding on notice. To do so, we examine the entire record made before the administrative agency. 2 Pa.C.S. § 704; *Universal Am–Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 563 Pa.480, 762 A.2d 328, 331 n.2 (2000).

■ "Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Shinsky)*, 492 Pa.1, 421 A.2d 1060, 1062 (1980). Findings of fact will be overturned only if they are arbitrary and capricious. *Id.* at 1063. A court on appeal must read the evidence in the light most favorable

2. The dissent agreed with the WCJ that Sell neither knew nor had reason to know of the work-related nature of her injury prior to August 31, 1993, and believed that both the Board and the court's majority had acted outside their authority in denying Sell benefits inasmuch as the record provided substantial support for the WCJ's finding that Sell's notice was timely.

to the prevailing party below, including the benefit of all inferences reasonably drawn. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa.322, 652 A.2d 797, 800 (1995). The appellate role in worker's compensation cases is not to reweigh the evidence or review the credibility of witnesses; rather, the Board or the court must simply determine whether, upon consideration of the evidence as a whole, the WCJ's findings have the requisite measure of support in the record. *Id.*

In addition to these rules, we remain mindful that the Act is remedial in nature, intended to benefit workers, and must be liberally construed to effectuate its humanitarian purpose. *Wolfe,* 652 A.2d at 799. Furthermore, we have recognized that the courts should not read into the notice provision of the Act a stricter requirement than its language requires. *Katz,* 403 A.2d at 519.

 Turning to the statute before us, § 631 provides that an employee, whose employer is unaware that a work injury has occurred, must notify the employer of the injury within 120 days of its occurrence, or be denied compensation. 77 P.S. § 631. Section 631's 120–day notice period, however, is not absolute; § 631 includes the "discovery rule." Thus, in the same way that the discovery rule tolls a statute of limitations in a medical malpractice case, *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040, 1043 (1992), the 120–day notice period of § 631 does not begin to run in cases in which the nature of the injury or its causal connection to work is not known, until an employee knows or by the exercise of reasonable diligence, has reason to know of the injury and its possible relationship to her employment. 77 P.S. § 631.

In our view, by incorporating the discovery rule in § 631, the Pennsylvania legislature saw to it that employees who suffer an injury that is not readily and immediately ascertainable have the same rights under the Act as those employees who sustain an injury that is, as long as they proceed with reasonable diligence. *See Hayward,* 608 A.2d at 1042. For

purposes of applying the discovery rule, the standard of reasonable diligence is a familiar one. We have stated that "'reasonable diligence is just that, a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case'", *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 249 (1995) (citation omitted), and have emphasized that even though reasonable diligence is an objective, rather than a subjective standard, it is sufficiently flexible to take into account the different capacities people have to deal with the circumstances they confront. *Id.*

The specific question that § 631's discovery rule presents in this appeal is straightforward: Does the substantial evidence of record support the WCJ's finding that prior to receiving Dr. Cohn's medical diagnosis on August 31, 1993, Sell neither knew nor had reason to know that she sustained an injury that was possibly connected to her work? The WCJ found:

15.c. When [Sell] handed in her doctor's note on or about August 31, 1993, she also gave notice to [LNP Engineering] of her belief that the exposure to the work environment had aggravated or caused her health problems. The undersigned finds that [Sell] gave timely notice by August 31, 1993 under [77 P.S. § 631]...since she did not know, nor did she have reason to know, prior to that date that her respiratory ailment was affected by the daily and repetitive exposure to chemical fumes, odors and dust while in the scope of her employment with [LNP Engineering].

(WCJ's decision at 7)

Not surprisingly, the parties' respective answers to this question are similarly straightforward. Sell, of course, argues that the substantial evidence sustains the WCJ's finding that until she received Dr. Cohn's medical diagnosis, she was not chargeable under § 631 with actual or constructive knowledge of her work-related injury. LNP Engineering argues that it does not, and would have us conclude that § 631's notice period began to run no later than, if not well before, November 23, 1992, rendering Sell's notice on August 31, 1993 untimely.

■ Having thoroughly reviewed the record, we sustain the WCJ's finding. The nature and context of the injury for which Sell sought benefits is central to our decision. Sell's aggravated emphysema was not the result of an accident or some other event of which she would have been immediately aware. Instead, it was the outcome of disease, a slow and silent process. The emphysema, due to cigarette smoking, manifested itself incrementally and developed over time.[3] The exacerbation of the emphysema, the result of Sell's work environment, also revealed itself in degrees. It caused Sell to experience symptoms like those that characterized the underlying disease. While Sell was developing or suffering from the emphysema and the aggravation of the disease, she also succumbed to bouts of bronchitis or pneumonia. Thus, the substantial evidence relating to the course taken by Sell's disease provides ample support for the WCJ's determination that without the benefit of medical consultation, Sell neither knew, nor should have known, that from among all her respiratory difficulties, there was a compensable injury. Moreover, the WCJ's finding reflects the view that Sell should not have been expected to sort through her many symptoms unassisted and essentially diagnose herself. Based on the evidence regarding the injury with which Sell was dealing, we can only agree.

Indeed, the perspective we took in one of our prior decisions with regard to disease that forms the basis of a claimed injury and the obstacles that an employee encounters in assessing its development validates the WCJ's finding. In *Price v. Work-*

3. We take this opportunity to observe that the substantial evidence does not support one of the WCJ's findings. There is no evidence to support the finding that Sell "had related [her emphysema] to the fact that she had smoked cigarettes." The record does not show to what cause Sell attributed her emphysema. During the hearings before the WCJ, Sell was not asked to ascribe a cause to her emphysema, nor did she volunteer one. Regardless, this finding has no bearing on the case. As Sell's claim for benefits was for the aggravation of the emphysema, any finding as to Sell's understanding of her emphysema's cause is irrelevant. We note, however, that the Board and the Commonwealth Court set forth this finding in their respective opinions. Both tribunals, therefore, credited Sell with certain knowledge that the record does not show she had.

men's Compensation Appeal Board (Metallurgical Resources, et al.), 533 Pa.500, 626 A.2d 114 (1993), when we held that as a general rule, the Act's statute of repose, like the Occupational Disease Act's statute of limitations, does not begin to run on claims for total disability due to occupational disease " 'until pertinent medical diagnosis is completely established to the knowledge of the claimant,' " we observed that "[t]his was so...because 'an occupational disease is latent and insidious and the resultant disability is often difficult to determine.' " *Id.* at 117 (*quoting, Ciabattoni v. Birdsboro Steel Foundry & Machine Co.*, 386 Pa. 179, 125 A.2d 365, 367–68 (1956)).

Nonetheless, the Commonwealth Court found statements that Sell made about formaldehyde and her testimony regarding the ebb and flow of her respiratory symptoms so compelling that it determined that once the emphysema was diagnosed in late November 1992, Sell knew or should have known that the chemicals at work caused the emphysema itself to worsen. We conclude, however, that in doing so, the court made too great a leap. While we agree that the evidence reveals a belief on Sell's part that formaldehyde adversely affected her well being and shows that the chemicals to which she was exposed at work made her feel tired and sick, we do not agree that this evidence provides a basis for rejecting the WCJ's finding. This is because the discovery rule, as incorporated by the legislature in § 631, calls for more than an employee's suspicion, intuition or belief; by its terms, the statute's notice period is triggered only by an employee's knowledge that she is injured and that her injury is possibly related to her job.

When read in its entirety, the record establishes that at the time Sell's emphysema was diagnosed, she was a layperson who thought that the formaldehyde in her work environment was harmful. Aware that she held an uninformed view, Sell sought out an expert who could tell her whether she was correct to think so. In the exercise of reasonable diligence, and with notable persistence, Sell located Dr. Cohn, a physician who confirmed her suspicions about formaldehyde and informed her on August 31, 1993 that exposure to the chemical

exacerbated her emphysema. As the WCJ found, it was at this point, with a medical diagnosis in hand, that Sell had the knowledge that § 631 requires. To hold otherwise would, in our view, disregard the substantial evidence that supported the WCJ's finding, and violate the well-settled principles that mandate a remedially-minded application of the Act and a strict interpretation of § 631's language.

Thus, we uphold the WCJ's finding that the 120–day notice period of § 631 did not begin to run until Sell received a medical diagnosis of her work-related injury on August 31, 1992, as well as the finding, which necessarily follows, that Sell's notice on that date to LNP Engineering was timely. Accordingly, we reverse the opinion and order of the Commonwealth Court, and reinstate the WCJ's June 30, 1997 order granting Sell's Claim Petition.

Justice FLAHERTY files a concurring opinion in which Justice SAYLOR joins.

Justice ZAPPALA files a dissenting opinion.

FLAHERTY, Chief Justice, Concurring.

Indeed, as stated in the dissent authored by Mr. Justice Zappala, "... the majority would seemingly require a claimant to know absolutely the causal relationship between an injury and its work relatedness ..." I cannot join in that view. On this record the claimant suspected, but did not know of the possible causal connection between her symptoms and the work environment. Suspicion of a possible causality is less than knowledge of it. The record clearly demonstrates a reasonably diligent effort by claimant to ascertain whether her suspicion had medical foundation, eventuating in a medical confirmation of her suspicion on August 31, 1993. I, thus, concur in the result, but not entirely in the rationale as expressed by the majority.

Justice SAYLOR joins this concurring opinion.

128

ZAPPALA, Justice, Dissenting.

## DISSENTING OPINION

Because it is clear that Appellant, Joan Sell, knew, or should have known, of the possible existence of her work-related injury on November 23, 1992, and failed to timely notify her employer within 120 days thereof as required by Section 311 of the Workers' Compensation Act, 77 P.S. § 631, I dissent from the majority's decision to the contrary.

As noted, Section 311 of the Act provides that a claimant must notify his or her employer of a work-related injury within 120 days of its occurrence, unless the employer is already aware that the injury has occurred. If timely notice is not provided, the claimant is barred from receiving compensation. The time for giving notice does not begin to run until the claimant knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his or her employment.

Here, the WCJ found that Appellant suffered from a chronic obstructive lung disease, emphysema, which was aggravated by her exposure to chemical irritants, particularly formaldehyde, while at work. Thus, the issue of notice turns on when Appellant knew or reasonably should have known that her underlying respiratory ailment was affected by the daily and repetitive exposure to chemical fumes, odors and dust in the workplace. The WCJ made the following relevant finding in this regard:

6. Claimant credibly testified that as a result of continuous and daily exposure to dust, fumes and odors from the manufacturing process, she developed difficulty with breathing. She developed shortness of breath and wheezing, along with other symptoms, including dizziness and nausea. *A pattern of becoming increasingly ill with these symptoms as she continued to be exposed to these chemicals throughout the work week was demonstrated. Claimant testified that her symptoms would improve over the weekend, while being away from the exposures. The pattern would repeat itself with the start of a new workweek. Claimant further*

*testified that she had no health problems when she started working with the Defendant in 1979. No evidence was presented to the contrary.*

WCJ's decision at 3 (emphasis added).

Other evidence of record reveals that on November 23, 1992, Appellant had great difficulty breathing and immediately went to the hospital, where she was admitted as an in-patient. Upon discharge from the hospital, Appellant did not return to work. Thereafter, Appellant searched for a physician with knowledge of the chemicals and dust in her work environment. She contacted the American Lung Association in 1993 because she "couldn't find a doctor that would even discuss chemicals, dust, [her] work environment." N.T., 9/7/94 at 19–20. She told co-workers that she thought her problems might be work-related, although she did not inform her supervisor of this fact because she "didn't have any proof." *Id.* at 33–34, 125 A.2d 365. Finally, when Appellant was able to confirm her suspicions that her injury was work-related, through a physician's diagnosis on August 31, 1993, she told the head of Appellee's personnel department the following:

> I told her that—I explained to her about the formaldehyde and how it had affected me, and how *I knew that that's what caused the attack.* But I had to get a doctor that knew about formaldehyde. Doctor's [sic] don't seem to know about that.

*Id.* at 21–22, 125 A.2d 365 (emphasis added).

In my view, the substantial evidence of record does not support the WCJ's conclusion that Claimant did not know of the relationship of her injury to her employment until August 31, 1993, when she received a medical diagnosis to this effect. Clearly, Appellant knew of the *possible* relationship between the symptoms she was experiencing and the work environment after she had the acute attack on November 23, 1992. Thereafter, she continually sought medical confirmation of this fact. That she did not have a medical diagnosis confirming her knowledge is not significant for purposes of the 120 day notice requirement of Section 311. The majority would seem-

130

ingly require a claimant to know absolutely the causal relationship between an injury and its work-relatedness before the 120 day period of Section 311 is triggered. This, however, is not what the language of the provision states. To the contrary, the provision states that the time begins to run from when an employee "knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its *possible* relationship to his employment."

Here, as Appellant knew of the existence of her injury and its possible relationship to her employment as of November 23, 1992, she was required to inform her employer of her injury within 120 days thereof. Appellant would then have had up to three years, pursuant to 77 P.S. § 602, to file a claim petition setting forth the specific allegations regarding her injury. Since Appellant failed to give timely notice of her injury, I would affirm the Commonwealth Court's decision and order.