# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Waste Management and          :
Gallagher Bassett Services, Inc.,          :
                 Petitioners     :
                 :
        v.                :    No. 297 C.D. 2015
                 :    Submitted: September 11, 2015
Workers' Compensation Appeal     :
Board (Fessler),                 :
                Respondent    :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**            **FILED: October 23, 2015**


       Waste Management (Employer) and Gallagher Bassett Services, Inc., (Insurer) (collectively, Petitioners) petition for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting the claim petition of David Fessler (Claimant). Petitioners argue the Board erred as a matter of law because competent evidence does not establish that Claimant's injury occurred within the scope of employment. Petitioners also contend Claimant did not provide timely notice of his work injury in accordance Section 311 of the Workers' Compensation Act (Act).[1] Discerning no error below, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §631.

## I. Background

Claimant worked for Employer as a swing driver on a sanitation truck for 15 years. His duties included tossing trash, cleaning the truck and acting as a front-loader. As a front-loader, he went "to nursing homes, hospitals, kennels [and] pick[ed] up the waste." Reproduced Record (R.R.) at 399a.

On March 28, 2011, Claimant noted a rat was inside the truck, as it left traces of urine and feces. Also, Claimant's gloves were wet and chewed up. Claimant skinned his knee while climbing into the truck. He became ill at work the next day. Toward the end of the work day, Claimant fainted in the truck. His feet swelled and hurt so he went to the hospital. Claimant remained hospitalized from the beginning of April until May 13, 2011. While hospitalized, he required kidney dialysis, entered a coma and his feet were amputated as a result of a bacterial infection. Claimant was unable to perform his job since the incident.

In October 2011, Claimant filed a claim petition alleging that on March 28, 2011, he experienced a severe infection during the course and scope of his employment that led to amputation of both feet. He sought total disability benefits from March 29, 2011 and ongoing, as well as payment of medical bills and counsel fees. Claimant also filed a penalty petition, asserting Employer violated the Act by failing to issue the appropriate document within 21 days either accepting or denying the injury.

The matter was heard by a WCJ. At the hearing, Claimant testified and presented the deposition testimony of Amir Katz, M.D. (Treating Physician),

2

who is board certified in physical medicine and rehabilitation, and in electrodiagnostic medicine. Treating Physician diagnosed Claimant with an infection of Capnocytophaga bacteria. The infection led to "bilateral Chopart amputation at both feet, peripheral polyneuropathy, motor and sensory, axonal and demyelinating moderate to severe, ambulation dysfunction, and phantom pain and phantom sensation in both lower extremities." WCJ Op., 1/4/13, Finding of Fact (F.F.) 9.c; R.R. at 124a. He opined Claimant developed these conditions as a result of sepsis and hemolytic uremic syndrome based on his exposure to bacteria at work. He further opined this type of bacteria can be found in the saliva and urine of small animals like cats, dogs and rats. Lastly, he opined Claimant would not be able to return to his pre-injury job with Employer as a result of this work injury.

Petitioners presented the testimony of several co-workers regarding Claimant's reporting of the incident and his work duties. Petitioners' fact witnesses denied receiving notice of a claim from Claimant until Employer received the claim petition in October 2011.

Dennis Peterson, Employer's district manager, testified at the hearing that Claimant's duties required him to climb into the truck and included shoveling debris out of the back of the truck. Peterson indicated that Claimant completed a driver vehicle inspection report (DVIR) regarding pre-and post-trip truck inspections to indicate the truck's condition. He noted that Claimant did not report any problems. However, at deposition, Peterson conceded that rats or rat droppings may not be noted in DVIR reports, stating "… they may just sweep them out and go about their day …." F.F. No. 8; R.R. at 320a.

3

Employer also presented the deposition testimony of Michael Silverman, M.D. (Employer's Physician), who is board certified in internal medicine and the subspecialty board of infectious diseases. Based on his review of Claimant's medical records, Employer's Physician agreed that Claimant developed a severe infection related to the rare bacteria Capnocytophaga, and that he developed severe complications resulting in amputation. He explained the bacteria is found in the saliva of dogs and cats, and in the human oral cavity. However, Employer's Physician stated he found no evidence that this bacteria is found in rats or their feces or urine. Thus, he opined it was unlikely that Claimant's condition was the result of exposure to rat feces. He further opined there was no evidence Claimant's condition occurred as the result of any work-related exposure. Alternatively, he noted Claimant owned dogs and cats, and likely developed the infection as a result of exposure to them. He also suggested the more likely source of the infection was periodontal disease. However, he acknowledged Claimant's medical records did not indicate he had any history of periodontal disease.

Based on the evidence presented, the WCJ granted Claimant's claim petition, awarding causally related medical expenses as well as total disability benefits from March 30, 2011, and ongoing. The WCJ determined Claimant did not establish Employer violated the Act; therefore, he denied the penalty petition. The WCJ also denied Claimant's request for unreasonable contest attorney fees.

The WCJ credited Claimant's testimony and the testimony of Treating Physician. Specifically, the WCJ credited Claimant's testimony regarding his discovery of rat waste in the truck's cab, and that his gloves were chewed and wet

on March 28, 2011. The WCJ also credited the testimony of Employer's fact witnesses that Claimant did not report his illness as work-related before he filed his claim petition. The WCJ credited Employer's Physician's testimony in part, as to the sources and rareness of the bacteria. However, the WCJ rejected Employer's Physician's testimony to the extent he opined that Claimant's injury was not work-related.

With regard to causation, the WCJ found both physicians agreed Claimant's illness was caused by Capnocytophaga bacteria. However, he found "neither expert demonstrated a full understanding of [Claimant's] description of the events of March 28, 2011. … Neither doctor, however, appreciated Claimant's testimony that he discovered his cotton glove liners were chewed and still wet when he entered his truck in the early morning of March 28, 2011." F.F. No. 9.c. Nonetheless, he found the circumstances, supported by the credible medical information regarding the limited sources of the bacteria, supported the inference that Claimant's exposure to the Capnocytophaga bacteria came from handling his gloves. Id. Accordingly, the WCJ concluded Claimant became infected by the bacteria during the course of his employment.

The WCJ deemed Claimant to have sustained the following work injuries: "bilateral Chopart amputations, peripheral polyneuropathy, motor and sensory, axonal and demyelinating moderate to severe, ambulation dysfunction, and phantom pain and phantom sensation in both lower extremities." WCJ's Op., Concl. of Law No. 2. Petitioners appealed to the Board.

5

Ultimately, the Board affirmed, determining Claimant sustained a work injury on March 28, 2011. The Board reasoned that Claimant met his burden of proving a work injury because the WCJ credited his testimony regarding the source of the infection. The Board noted the WCJ also credited Treating Physician's testimony that exposure to rat feces and urine, and handling wet, chewed-up gloves, led to Claimant's exposure to the bacteria that caused his illness and amputation. Treating Physician also opined Claimant was disabled as a result of his work injury. As a result, the Board concluded substantial, competent evidence supported the WCJ's determinations.

The Board emphasized there was "no conflict in the underlying mechanism of injury here, as the [WCJ] found Claimant was exposed to the bacteria by handling chewed, wet gloves that were in the cabin of his truck that had evidence of rats." Bd. Op., 2/6/15, at 5. While there was some question as to the specific source of the exposure, as rat feces or the saliva and urine of small animals including rats, the testimony did not conflict with the WCJ's critical finding as to causation. The Board noted the WCJ rejected Claimant's testimony to the extent he claimed to give notice prior to October 12, 2011. However, the Board held Claimant's notice was timely pursuant to the discovery rule, as he did not know the illness was work-related until Treating Physician so advised him.

Petitioners filed a petition for review, and requested a supersedeas pending appeal, which this Court denied.

6

On appeal,[2] Petitioners raise two issues. First, Petitioners argue Claimant did not prove his injury was work-related. Additionally, Petitioners assert Claimant did not provide Employer with timely notice of his work injury.

### A. Competent Evidence

For an injury to be compensable under the Act, it must arise in the course of employment. Section 301(c) of the Act, 77 P.S. §411(c); Krawchuk v. Phila. Elec. Co., 439 A.2d 627 (Pa. 1981). A claimant bears the burden of proving the necessary elements of his claim. Marazas v. Workers' Comp. Appeal Bd. (Vitas Healthcare Corp.), 97 A.3d 854 (Pa. Cmwlth. 2014). These elements include establishing a causal relationship between a work-related incident and the alleged disability. Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.), 812 A.2d 750 (Pa. Cmwlth. 2002). When "the causal connection between the employment and the injury is not obvious, the claimant must present unequivocal medical testimony to establish that connection." Id. at 754.

The issue of whether a medical opinion is unequivocal is a question of law, which is fully reviewable by this Court. Carpenter Tech. v. Workmen's Comp. Appeal Bd. (Wisniewski), 600 A.2d 694 (Pa. Cmwlth. 1991). Medical testimony is considered unequivocal and competent if the medical expert, after establishing a proper foundation, testifies within his professional opinion that a

---

[2] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated. Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger), 38 A.3d 1037 (Pa. Cmwlth. 2011).

certain fact or condition exists. Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post–Gazette), 954 A.2d 726 (Pa. Cmwlth. 2008).

In order to determine the competency of a medical witness's testimony, we review his entire testimony as a whole. City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel), 29 A.3d 762 (Pa. 2011). In conducting this review, we recognize that to be unequivocal, every word of medical testimony does not have to be certain, positive, and without reservation or semblance of doubt. Phila. College of Osteopathic Med. v. Workmen's Comp. Appeal Bd. (Lucas), 465 A.2d 132 (Pa. Cmwlth. 1983).

A medical expert is permitted "to express opinion testimony on matters based, in part, upon reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession." Kriebel, 29 A.3d at 770. An expert may base his opinion on facts of which he has no personal knowledge, provided those facts are supported by evidence of record. Id.

Here, Petitioners argue the WCJ erred in determining Claimant's injuries were work related. Specifically, Petitioners assert there is no evidence showing Claimant contracted the Capnocytophaga bacteria that led to his illness and subsequent injuries while on the job.

There is no dispute that Claimant suffered from an infection caused by Capnocytophaga bacteria. The experts disagreed as to whether Claimant contracted the bacteria in the work setting.

8

This Court analyzed the competency of expert medical testimony regarding the source of a claimant's illness in <u>Craftex Mills, Inc. v. Workers' Compensation Appeal Board (Markowicz)</u>, 901 A.2d 1077 (Pa. Cmwlth. 2006). There, this Court found the medical evidence sufficiently unequivocal when a medical expert testified as to the causes of the disease compared with the claimant's exposure to those causes. In that case, the claimant suffered from problems breathing. A lung biopsy related his illness to exposure to a certain spore. He suffered these problems after his duties included cleaning an air conditioning system. The parties did not dispute that spores caused the claimant's illness. Rather, the dispute involved whether the spores that caused the illness were found in the workplace. This Court found that testimony that the claimant worked in the air conditioning units constituted sufficient, competent evidence when paired with medical testimony regarding air conditioners as a potential source of the spores.

Specifically, this Court reasoned that physical evidence as to the existence of the spores in the air conditioning units at the workplace was unnecessary. <u>Id.</u> Though there was no evidence of the existence of the spores in the workplace, the medical expert's experience and knowledge pertained to where the spores may be found. The medical expert's testimony that the spores were frequently found in air conditioning units sufficed. Thus, we deemed the medical testimony competent because the expert testified based on his knowledge of the epidemiology of the illness that the claimant's spore-related illness was work-related.

Our grounds for upholding the competency of the expert's testimony as to causation in <u>Craftex Mills</u> may be analogized to the instant case. Here, as in <u>Craftex Mills</u>, there is no dispute as to the cause of the illness, Capnocytophaga bacteria. The basis of the dispute is whether Claimant came into contact with the cause of the illness at the workplace. Here, as in <u>Craftex Mills</u>, there is evidence that Claimant's duties brought him into contact with potential sources of the bacteria. R.R. at 134a, 137a-38a, 158a. The WCJ credited Claimant's testimony regarding his work activities on the day before his illness, including his contact with rat urine and feces and handling his wet, rat-chewed gloves. F.F. No. 9.a; R.R. at 435a-36a.

Both medical experts agreed the bacteria is rare. Further, both experts testified that it may be contracted from limited sources, including exposure to small animals. R.R. at 129a, 154a, 245a, 274a; <u>see also</u> R.R. at 172a (Study).

Treating Physician repeatedly opined Claimant came into contact with the bacteria at work. R.R. at 109a, 111a, 124a. As to how Claimant came into contact with this bacteria, Treating Physician further opined:

> it was clear that <u>the bacteria</u> that was isolated was bacteria that <u>lives in the gastrointestinal system and also in the saliva and in urine of small animals such as</u> cats, dogs, <u>rats</u>, and it is called c-a-p-n-o-c-y-t-o-p-h-a-g-a, and those bacteria are not native to humans other than in the teeth, but <u>those bacteria are isolated from small animals</u>, and there were multiple studies that were done about this, and when humans come into contact with that, they tend to develop, in rare cases, sepsis that can lead to death, and if it does not cause death, then it causes a coma, it causes severe complications such as acute renal failure, gangrene in the lower extremities or in the upper

10

extremities, and it also can cause brain damage in some cases.

R.R. at 109a-10a (emphasis added). Thus, Treating Physician testified the bacteria is transmitted by rats, and he noted Claimant came into contact with rat feces and urine when he cleaned out the truck. Id. at 133a. Treating Physician confirmed his testimony that the exposure can be from a rat or "any small animal." Id. at 137a, 151a-52a. Although Treating Physician conceded the exact portal of entry was unknown, R.R. at 139a, he opined that, based on Claimant's activities, he contracted this rare bacteria while at work.

Employer's Physician testified "it's pretty clear that [the bacteria is] found in the oral cavity." R.R. at 257a. Although he excluded rat feces or urine as a possible source based on his review of medical literature, Employer's Physician acknowledged an authoritative article on the bacteria noted "animal exposure" was a potential source. R.R. at 172a, 267a.

Viewed as a whole, the medical testimony supports the WCJ's finding that Claimant contracted the bacteria while at work. Medical evidence from both experts establishes the source of the bacteria is small animals, including rats. That Claimant came into contact with rat feces and urine, and handled his chewed gloves, is sufficient to show the causal link. Craftex Mills. The WCJ also credited Treating Physician's testimony that Claimant's exposure to the bacteria need only be microscopic to cause the infection that led to his injuries. An expert does not need to testify as to the definitive source of a disease that led to the illness to qualify as competent evidence. Id. By testifying as to the limited sources of exposure to the

11

bacteria, and eliminating other sources of exposure, Treating Physician's testimony was competent as to causation. Id.

Treating Physician's opinion is also based on a proper foundation. Unlike the cases cited by Petitioners, Treating Physician's opinion is not based on a false medical history. Cf. Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking), 692 A.2d 1062 (Pa. 1997) (holding testimony based on false medical history is incompetent); Long v. Workers' Comp. Appeal Bd. (Integrated Health Serv., Inc., 852 A.2d 424 (Pa. Cmwlth. 2004) (medical opinion is incompetent when it is a substantial revision of prior opinion in response to correspondence from insurer, and expert did not have a complete medical history of claimant at the time of either opinion). To the contrary, Treating Physician's testimony is based on an accurate understanding of Claimant's job duties, including his responsibility for handling waste of kennels and cleaning out the truck.[3] R.R. at 134a.

In sum, Petitioners' grounds for challenging the competency of Treating Physician's testimony lack merit. Petitioners' arguments relate to the weight and sufficiency of the evidence, not its competency.

As fact-finder, the WCJ "has exclusive province over questions of credibility and evidentiary weight" and "is free to accept or reject the testimony of any witness ... in whole or in part." Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck), 664 A.2d 703, 706 (Pa. Cmwlth. 1995). Additionally, all

---

[3] That Treating Physician also noted Claimant came into contact with a dog carcass does not render his opinion regarding the source of the bacteria incompetent.

12

inferences drawn from the evidence shall be construed in favor of the party that prevailed before the WCJ. Krumins Roofing & Siding v. Workmen's Comp. Appeal Bd. (Libby), 575 A.2d 656 (Pa. Cmwlth. 1990).

Accepting the inferences that may be drawn from the evidence in Claimant's favor, and reviewing the medical testimony as a whole, substantial, competent evidence supports the WCJ's determination that Claimant established a work injury.

## B. Notice of Work Injury

Claimant provided notice of his work injury when he filed his claim petition in October 2011. Employer challenges this notice as untimely because it was beyond 120 days of when he sustained the injury, March 28, 2011. Claimant counters that the notice was timely under Section 311 of the Act.

Pursuant to Section 311, a claimant is required to provide notice to an employer within 120 days of a work injury. 77 P.S. §631. However, Section 311 incorporates the discovery rule, which tolls the start date for calculation. Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g), 771 A.2d 1246 (Pa. 2001). Therefore, the 120-day notice period does not begin to run "in cases in which the nature of the injury or its causal connection to work is not known, until an employee knows or by the exercise of reasonable diligence, has reason to know of the injury and its possible relationship to his employment." Id. at 1251.

13

Section 311 of the Act "calls for more than an employee's suspicion, intuition or belief; by its terms, the statute's notice period is triggered only by an employee's knowledge that [he] is injured and that [his] injury is possibly related to [his] job." Id. at 1253; see The Bullen Cos. v. Workers' Comp. Appeal Bd. (Hausmann), 960 A.2d 488 (Pa. Cmwlth. 2008). Notice may not be required until a claimant obtains a medical opinion as to the work-relatedness of a disease. Hausmann.

The timeliness of notice under Section 311 of the Act is a question of fact. Sell. Issuance of a claim petition is a valid means of providing notice. Arbogast & Bastian v. Workmen's Comp. Appeal Bd. (Bauer), 468 A.2d 1220 (Pa. Cmwlth. 1984) (date of mailing of claim petition was date from which 120 days should be calculated to determine timeliness of notice under Section 311).

Here, the WCJ found Claimant gave timely notice of his work injury. F.F. Nos. 9.a, 9.b; Concl. of Law No. 3. Despite rejecting Claimant's testimony regarding notice to various employees, the WCJ found the date of the filing of his claim petition constituted the date he notified Employer that his injury was work-related, on October 12, 2011. F.F. Nos. 9.a, 9.b.

Claimant's suspicions about the cause of his injury were not sufficient to trigger his duty to report his claim. Sell. However, once Claimant had a medical diagnosis in hand, he possessed the knowledge that Section 311 requires for notice. Id.

14

The WCJ determined Claimant did not have a reasonable basis for his suspicion until his first meeting with Treating Physician. Concl. of Law No. 3. Claimant met with Treating Physician on October 10, 2011. Accordingly, Claimant acted with reasonable diligence in filing his claim petition within days of receiving Treating Physician's opinion. To hold otherwise would disregard the evidence that supported the WCJ's finding and "violate the principles that mandate remedially-minded application of the [Act]…." Sell, 771 A.2d at 1253.

In short, the record shows Claimant acted with reasonable diligence in providing notice of his claim once Treating Physician confirmed his suspicions. Therefore, Claimant provided timely notice pursuant to Section 311 of the Act.

### III. Conclusion

For the foregoing reasons, we affirm.

_____
ROBERT SIMPSON, Judge

Judge McCullough did not participate in the decision in this case.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Waste Management and
Gallagher Bassett Services, Inc.,
                              Petitioners

                 v.

Workers' Compensation Appeal
Board (Fessler),
                        Respondent

:
:
:
:
:
:    No. 297 C.D. 2015
:
:
:
:
:

## **O R D E R**

      **AND NOW**, this 23rd day of October, 2015, the order of the Workers'

Compensation Appeal Board is **AFFIRMED**.

 

                            _____

                            ROBERT SIMPSON, Judge