IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Newman,                            :
                                           :
                    Petitioner             :
                                           :
          v.                               : No. 1850 C.D. 2016
                                           : Submitted:  March 31, 2017
Workers' Compensation                      :
Appeal Board (Geisinger                    :
Community Health Services),                :
                                           :
                    Respondent             :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                             FILED:  August 22, 2017


          Richard Newman (Claimant) petitions for review of the October 28,
2016 order of the Workers' Compensation Appeal Board (Board), which reversed
the decision of a workers' compensation judge (WCJ) and held that Claimant did
not provide timely notice of his work injury to Geisinger Community Health
Services (Employer).  We affirm.

          On September 19, 2011, Claimant filed a claim petition alleging that
he sustained a work-related injury in the nature of a mitral valve rupture on May
31, 2009.  Employer filed a timely answer denying these allegations and asserting,
*inter alia*, that Claimant's claim was barred by his failure to provide notice in

accord with Section 311 of the Workers' Compensation Act (Act).[1] The matter was assigned to a WCJ for hearings.

Claimant testified by way of deposition on November 28, 2011, and before the WCJ at a hearing on September 5, 2012. Claimant, a board-certified psychiatrist since 1963, stated that he worked half-time for Employer beginning in September 2006, practicing at outpatient clinics at Geisinger Hospital in Danville, PA, and Bloomsburg Hospital in Bloomsburg, PA. Claimant lived in Lionville, PA, and commuted 115 miles from his home to an apartment in Danville. He worked for Employer three days a week, 37 weeks a year, and was in a rotation to be on call weekdays and weekends. During an on-call weekend, Claimant would work continuously from 8:00 a.m. Saturday morning to 8:00 a.m. Monday morning for both hospitals, visiting all patients on the psychiatric wards during the day and

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §631, which states, in part, that:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employee . . . shall give notice of thereof . . . within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases…in which the nature of the injury or its relationship to the employment is not known to the employee, the time for giving notice shall not begin to run until the employee knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment

Section 312 of the Act states:

> The notice referred to in Section 311 shall inform the employer that a certain employee received an injury, described in ordinary language, in the course of his employment on or about a specified time, at or near a place specified.

77 P.S. §632.

remaining on call for any emergencies during the night. Reproduced Record (R.R.) at 5, 6, 10, 12, 13, 36.

Claimant testified that on-call weekends typically kept him from sleeping soundly through the night and resulted in his being fatigued for a few days thereafter. Claimant stated that his regimen of regular exercise and his general good health had enabled him to quickly recover after each on-call weekend and he worked on-call weekends regularly from September 2006 to June 2009. R.R. at 7, 18, 29.

Claimant worked on-call during the weekend of Saturday, May 30, 2009, to Monday, June 1, 2009. Claimant stated that he began the weekend feeling fine, but he slept only four or five hours Saturday night and, with hospital nurses contacting him constantly, he did not sleep at all Sunday night. Claimant worked his normal outpatient clinic hours the following Monday and Tuesday and then drove home to Lionville. He returned to work on Tuesday, June 9, 2009. R.R. at 6, 29.

Claimant said that he was exhausted after the on-call weekend and that he complained of lingering fatigue from that weekend to his supervisors, including the head of the psychiatry department, the supervisor of the outpatient clinics, and the hospital administrator, in early June. Claimant testified that his fatigue continued, and over time he began to feel dizzy, lightheaded, and short of breath. Indicating that at first he was in denial about his condition, Claimant said he eventually called his primary care physician, Greg Bankovic, M.D., and saw him in mid-July. R.R. at 6-8.

Dr. Bankovic instructed Claimant to visit his cardiologist, Jack O'Hara, M.D., whom Claimant saw on July 24, 2009. Dr. O'Hara determined that

Claimant had a heart murmur and referred Claimant to a specialist for heart surgery. After undergoing several additional tests, Claimant underwent surgery to repair mitral regurgitation on August 26, 2009. Claimant testified that he had a difficult postoperative course, including additional surgery and rehabilitation, over the next several months. Claimant also suffered vision difficulties for which he was hospitalized in November 2009.

Claimant continued to work for Employer three days a week until July 31, 2009, but he did not work any on-call weekends. After Claimant stopped working, he received salary continuation payments for six months. He then received long-term disability benefits for a year. In November 2010, Claimant returned to work with Employer for several weeks, treating outpatients on a part-time basis, but he did not earn enough money to cover his expenses. Claimant stated that he approached Employer about opening a workers' compensation claim, "probably [in] 2010." R.R. at 46-47. He acknowledged that he wrote to Dr. Bankovic on November 11, 2010, asking if he could confirm that Claimant's mitral valve tear was not a heart attack and that it was related to the demands of the on-call weekend in 2009. He did not recall Dr. Bankovic's response. R.R. at 51-52.

Dr. O'Hara authored a letter to Claimant's counsel on July 20, 2011, detailing Claimant's symptoms and course of treatment, and he later testified by deposition on February 6, 2012. He stated that he had been treating Claimant since 2003 for high blood pressure, palpitations, and high cholesterol and performed a heart catheterization in 2008. Dr. O'Hara testified that Claimant had a history of a mild mitral valve leak, a common condition that did not impact Claimant's ability to function, dating back to 2002. Supplemental Reproduced Record (S.R.R.) at 60-61.

4

Dr. O'Hara testified that he saw Claimant on April 20, 2009, for a routine follow up of his high blood pressure, and he did not note anything unusual about Claimant's condition. However, at Claimant's next visit, on July 24, 2009, Claimant described new symptoms, including waves of fatigue at rest, lightheadedness after exercise, exhaustion, and tightness in his chest. Dr. O'Hara testified that upon examination, he heard murmurs and ordered a stress echo that was performed on August 3, 2009. Claimant underwent a cardiac catheterization and echocardiogram on August 11, 2009, which revealed that he had severe mitral regurgitation due to a mitral valve prolapse. Dr. O'Hara referred Claimant to Dr. Samuels for surgery on August 26, 2009, to repair the mitral valve.

Dr. O'Hara stated that, within a reasonable degree of medical certainty, it was his opinion that Claimant's stressful on-call weekend of May 30 to June 1, 2009, was causally related to the ruptured mitral valve. As support, he noted that Dr. Samuels' records indicated that Claimant could recall the date and time when his symptoms began. Dr. O'Hara believed that Claimant will never return to his pre-2009 levels of cardiovascular health and will have some degree of ongoing cardiac impairment. S.R.R. at 63-65, 71.

Jeffrey Weisman, M.D., a board certified cardiologist, examined Claimant on Employer's behalf on March 30, 2012. Based on his evaluations of Claimant and the history Claimant provided, Dr. Weisman concluded that Claimant's medical conditions were not a consequence of stress during the on-call weekend.

In a decision dated December 21, 2012, the WCJ credited the testimony of Claimant and Dr. O'Hara to find that Claimant sustained a work injury in the nature of a mitral valve prolapse that required surgery and rendered

5

Claimant unable to return to his pre-injury employment. WCJ's Findings of Fact, Nos. 5-7. The WCJ concluded that Claimant met his burden in the claim proceeding and awarded total disability benefits for the period from July 24, 2009, to August 1, 2010, and partial disability benefits thereafter. Employer appealed to the Board, arguing that Claimant failed to provide Employer timely notice of the work injury and failed to prove causation with substantial evidence.

In its August 28, 2014 opinion, the Board concluded that the WCJ's finding that Claimant had suffered a work injury during the weekend of May 30, 2009, was supported by substantial evidence. However, the Board noted that the WCJ failed to issue any findings as to whether Claimant had provided Employer with notice of the work injury as required by Section 311 of the Act. Accordingly, the Board remanded the case to the WCJ for additional findings.

The WCJ circulated a second decision and order on July 24, 2015 (remand op.) which reaffirmed the findings and conclusions of his prior decision and included the following:

> 3. After a full review of the evidentiary record I find that Claimant did provide sufficient notice to employer of his May 31, 2009 work injury. I base this finding on the following testimony of the Claimant which I find to be credible:
>
> a. Claimant worked for Employer during the weekend of May 30, 2009. His work was stressful and "exceedingly demanding." As a result of his work he became exhausted. When this exhaustion did not go away the following week, he complained all week to the chairman of the department, the head of the out-patient clinic, and the administrator, Mark Bessinger. He "felt terrible" and complained to his supervisors about the work load and fatigue.

6

b. Claimant first received disability pay from Employer and then received benefits from a long-term disability policy. In 2010 Claimant asked Employer to open a workers' compensation claim for him. On December 11, 2010 Claimant wrote a note to his family physician, Dr. Bankovic, asking him if [he] could support that the tearing of the mitral valve was related to his being on-call at work.

CONCLUSION OF LAW

Claimant provided sufficient timely notice of his work injury by notifying Employer that his exhaustion was caused by his work-related activities. There is no evidence that Claimant provided notice that the mitral valve prolapse or subsequent surgery were related to his work injury until he filed his Claim Petition on September 19, 2011. However, an exact diagnosis is not required to establish notice of a work injury. *Gentex Corp. v. [Workers' Compensation Appeal Board (Morack)*, 23 A.3d 528 (Pa. 2011).[2]]

---

[2] In *Gentex*, the court addressed the degree of specificity with which a claimant must describe a work injury to her employer under Section 312 of the Act. The claimant in *Gentex* worked for her employer 45 years. For ten years she was a lens inspector of Air Force helmets; for the next 33 years she inspected the sewing on the entire helmet. In 2003, she took on additional work as a final inspector, a position that required her to handle up to hundreds of helmets per day, each weighing as much as nine pounds. Beginning in 2003, the claimant experienced pain and swelling in her hands, and her fingers would become stuck in certain positions. On January 17, 2005, the claimant informed her supervisor that she could no longer tolerate the pain in her hands and would have to leave work.

The claimant saw a doctor that same day and delivered his note excusing her from work to the employer. For the next five days, she telephoned the employer daily, indicating that she could not return to work because of the swelling in her hands. On February 2, 2005, she submitted an application for short-term disability on which she indicated she did not believe her illness was work-related. She listed her medical conditions as swelling in her arms, hands, knees, and ankles, and attributed them to fibromyalgia and high blood pressure which had been diagnosed in 1993.

**(Footnote continued on next page…)**

WCJ's remand op. at 3.

Employer again appealed to the Board. In a decision dated October 28, 2016, the Board first noted that compliance with the notice provisions of the Act is a prerequisite to an award of compensation and a claimant bears the burden of establishing that timely notice was provided to the employer. *Gribble v. Workers' Compensation Appeal Board (Cambria County Blind Association)*, 692 A.2d 1160, 1162 (Pa. Cmwlth. 1997). The Board stated that an employer must be informed of both an injury and the possibility that it is work-related. *Gentex*, 23 A.3d at 536. Referencing the discovery rule under Section 311, requiring notice within 120 days of the injury or the date when the claimant knows, or by the

---

**(continued…)**

The claimant was eventually referred to a rheumatologist, whose diagnoses of the claimant included bilateral carpal tunnel syndrome, flexor tendonitis, a right wrist cartilage tear, and right-sided DeQuervain's tendonitis. The rheumatologist ruled out fibromyalgia and high blood pressure as the cause of the claimant's hand conditions and concluded that they were work-related. On March 24, 2005, the claimant was released to return to work with restrictions. The employer was not able to accommodate those restrictions and terminated her employment.

Thereafter, claimant left a number of messages with the employer's human resources officer, including one message stating that she had "work-related problems," 23 A.3d at 531, and thereafter filed a claim petition. The WCJ awarded benefits finding that she provided timely and adequate notice to the employer as required by Sections 311 and 312 of the Act. The Board affirmed. This Court agreed that notice was timely but concluded that the claimant failed to sufficiently describe her injuries as required by Section 312. On further appeal, our Supreme Court reversed and held that the claimant's complaint to her supervisor on January 17, 2005, her last day of work, was sufficient to communicate a description of her injury, as well as the time and place at which it occurred. The Supreme Court noted that the claimant was unaware at that time that her injuries were work-related, but that, as soon as she received her diagnoses, she left a message informing the employer that she had work-related problems. The court concluded that the claimant's collective communications with the employer were sufficient to satisfy the notice requirements of Section 312.

exercise of reasonable diligence should know, of the existence of the injury and its relationship to the claimant's employment, the Board explained that a claimant has a responsibility to explore an injury's possible relationship to his employment with reasonable diligence when such relationship is not readily and immediately ascertainable. *Sell v. Workers' Compensation Appeal Board (LNP Engineering)*, 771 A.2d 1246, 1251 (Pa. 2001).[3]

---

[3] In performing her job duties, the claimant in *Sell* was in daily contact with hot fumes and dust from the processing of a number of chemicals. She also was a smoker and had averaged a pack of cigarettes a day for 40 years before cutting back to half a pack per day. In the 1980s the claimant began experiencing symptoms that included coughing and tightness in her chest, and she told coworkers she thought the symptoms might be work related but she did not seek proof or share her concerns with her employer. On November 23, 1992, the claimant experienced significant difficulty breathing and went immediately to the hospital. She was diagnosed with emphysema, a chronic obstructive pulmonary disease; the cause of her emphysema was not discussed. The claimant did not return to work. Instead, she attempted to find a physician with knowledge of the chemicals and dust in her workplace. After contacting the American Lung Association for help, the claimant finally located an allergist in August 1993. The allergist treated the claimant for her emphysema and told her that her exposure to chemicals at work had exacerbated her illness. On August 31, 1993, the allergist gave the claimant a note stating that she could return to work with cautious exposure to formaldehyde; the claimant gave the note to the employer's head of personnel and advised her that she was injured at work by her exposure to formaldehyde.

The WCJ found that the claimant provided timely notice to the employer, but the Board reversed, concluding that the claimant knew or should have known of the nature of her injury and its relationship to her employment when she was hospitalized on November 23, 1992. Commonwealth Court affirmed the Board's decision. On further appeal, the Supreme Court reversed. The court explained that "the nature and context" of the claimant's injury was central to its decision. *Sell*, 771 A.2d 1252. The court then noted that the claimant's aggravated emphysema "was not the result of an accident or some other event of which she would have been immediately aware." *Id.* Instead, the claimant's emphysema manifested itself incrementally over time, and the work-related exacerbation of her emphysema likewise revealed itself by degrees. *Id.* Additionally, while the claimant was developing emphysema and suffering an aggravation of that disease, she also succumbed to bouts of bronchitis and pneumonia. The court concluded that "the course taken by [the claimant's] disease provides ample support for the WCJ's determination that without the benefit of medical consultation, [the claimant] neither

**(Footnote continued on next page…)**

9

The Board concluded that Claimant's June 2009 complaints to his supervisors regarding his fatigue after the on-call weekend did not constitute notice of a work-related injury, because fatigue could be caused by many things, including a lack of sleep, and Claimant testified that he was *usually* exhausted after an on-call shift. Further, the Board reasoned that had Claimant, a physician himself, exercised reasonable diligence, he would have determined that he suffered an injury that was possibly related to his work shortly after his July 24, 2009 visit to Dr. O'Hara, based on the symptoms that he developed immediately after the on-call weekend and the diagnosis of the mitral valve problem in August 2009.[4] The Board concluded that Claimant did not provide notice to Employer before sometime in late 2010, and, therefore, he failed to provide timely notice of the injury as required by Section 311 of the Act. Accordingly, the Board reversed the WCJ's decision to grant the claim petition.

On appeal to this Court,[5] Claimant argues that his complaints of fatigue to hospital supervisors in June 2009 were sufficient to notify Employer of a work injury. Claimant also argues that the 120-day notice period under Section

---

**(continued…)**

knew, nor should have known, that from among all her respiratory difficulties, there was a compensable injury." *Id.*

[4] Though reasonable diligence is an objective standard, "it is sufficiently flexible to take into account the different capacities people have to deal with the circumstances they confront." *Sell*, 771 A.2d at 1251.

[5] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, or whether necessary findings of fact are supported by substantial evidence. *Milner v. Workers' Compensation Appeal Board (Main Line Endoscopy Center)*, 995 A.2d 492, 495 n.2 (Pa. Cmwlth. 2010).

10

311 does not begin to run until the work-relatedness of a condition is confirmed by a physician, and he asserts that he did not know that his mitral valve rupture was causally related to his employment until he received a letter from Dr. O'Hara in 2011.

Initially, we agree with the Board that Claimant's numerous complaints to Employer that he suffered exhaustion following an on-call weekend were insufficient to advise Employer that Claimant had suffered a work injury. As the Board observed, exhaustion may have many causes, including lack of sleep. Claimant's complaints involved precisely that circumstance, i.e., lack of sleep, and he testified that he typically was fatigued following an on-call weekend. Based on these facts, the WCJ erred in concluding that Claimant provided timely notice of his work injury in June 2009 by notifying Employer that he was exhausted as a result of his work activities during the on-call weekend.

Claimant relies on *Sell*, *Gentex*, and *The Bulletin Companies v. Workers' Compensation Appeal Board (Hausmann)*, 960 A.2d 488 (Pa. Cmwlth. 2008),[6] to argue that "an exact diagnosis is not required to establish notice of a

---

[6] In *Hausmann*, the claimant worked for 17 years in a plant that manufactured cleaning products and was exposed to ethylene butyl glycol ether and other solvents. In late 2001 he began to experience frequent urination and sought medical attention. He stopped working in June 2002 when the employer closed the plant. In July 2002 he was referred to a kidney specialist who recommended a kidney transplant. The claimant suspected that his kidney ailment was related to his chemical exposure in the workplace and retained an attorney to secure a medical expert to determine whether that was the case. In July 2004, he notified the employer that he sustained a work injury and filed a claim petition seeking benefits for an occupational disease, even though his attorney had not yet secured a medical expert. He first learned that his kidney problem was work related in March 2005.

The WCJ granted the claimant petition and the Board affirmed. The employer appealed, arguing in part that the claimant failed to give timely notice, where the claimant suspected in 2002 that his kidney problem was related to his job duties at the plant. This Court also affirmed,

**(Footnote continued on next page…)**

11

work injury," WCJ's remand op. at 3, and that Section 311's discovery rule requires more than an employee's suspicion, intuition, or belief to trigger the 120-day notice period. Specifically, Claimant argues that he satisfied the Act's notice requirement when he notified employer in June 2009 that he suffered a work injury and then gave Employer the exact diagnosis of the work injury promptly after receiving Dr. O'Hara's letter in 2011. We disagree.

The notice required by Section 311 of the Act must "inform the employer that a certain employee received an injury, described in ordinary language, in the course of his employment on or about a specified time, at or near a place specified." 77 P.S. §632. As stated above, given the totality of the circumstances, Claimant's complaints of fatigue and exhaustion following a 48-hour on-call weekend were not sufficient to satisfy these criteria.

More importantly, while Claimant argues that he did not know that his mitral valve injury was related to his employment until July 2011, he acknowledges that Section 311 of the Act requires the exercise of "reasonable diligence." In *Sell*, our Supreme Court explained:

> For purposes of applying the discovery rule, the standard of reasonable diligence is a familiar one. We have stated that "'reasonable diligence is just that, *a reasonable effort to discover the cause of an injury* under the facts and circumstances present in the case,'" *Cochran v. GAF Corp.*, [666 A.2d 245, 249 (Pa. 1995)], (citation omitted), and have emphasized that even though reasonable

---

**(continued…)**

relying on *Sell*, which specifically held that Section 311's discovery rule "calls for more than an employee's suspicion, intuition or belief; by its terms the statute's notice period is triggered only by an employee's knowledge that she is injured and that her injury is possibly related to her job." 771 A.2d 1253.

diligence is an objective, rather than a subjective standard, it is sufficiently flexible to take into account the different capacities people have to deal with the circumstances they confront. *Id.*

771 A.2d at 1251 (emphasis added). The Court then framed the issue as follows:

The specific question that [Section 311's] discovery rule presents in this appeal is straightforward: Does the substantial evidence of record support the WCJ's finding that prior to receiving [her doctor's] medical diagnosis on August 31, 1993, [the claimant] neither knew nor had reason to know that she sustained an injury that was possibly connected to her work?

*Id.* In this case, Claimant recognizes that Section 311 requires the exercise of reasonable diligence, but he does not identify what effort he made to discover the cause of his injury.

We conclude that *Sell*, *Gentex*, and *Hausmann* are distinguishable, and, thus, not controlling. *Sell* involved an ongoing aggravation of the claimant's underlying disease, and the claimant undertook a persistent and conscientious inquiry into the cause of her symptoms. *Gentex* addressed the degree of specificity with which a claimant must provide notice, but the issue of whether the claimant exercised due diligence was not raised in that case. Similarly, while the issue in *Hausmann* was the date on which the 120-day statute of limitations was triggered, the issue of whether the claimant exercised reasonable diligence to determine the cause of his injury was not addressed.

As instructed by our Supreme Court in *Sell*, we focus on the nature and context of Claimant's injury. 771 A.2d 1252. Claimant, a psychiatrist who worked for Employer in a medical setting, testified that he experienced unusually intense, persistent, and worsening symptoms immediately after a particularly

13

stressful on-call weekend. Although Claimant sought medical care about six weeks later, he apparently did not inquire of his treating physician, cardiologist, or surgeon concerning the cause of his 2009 mitral valve injury until he wrote to Dr. Bankovic in December 2010. In light of the nature and context of Claimant's injury, such delay supports the Board's conclusion that Claimant failed to make a reasonable effort to determine the cause of his injury. Because Claimant did not exercise the reasonable diligence required by Section 311 of the Act, the Board correctly held that he failed to provide timely notice of his work injury to Employer.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

Judge McCullough did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Newman, : 
 : 
Petitioner : 
 : 
v. : No. 1850 C.D. 2016
 : 
Workers' Compensation : 
Appeal Board (Geisinger : 
Community Health Services), : 
 : 
Respondent : 

# O R D E R

AND NOW, this 22nd day of August, 2017, the order of the Workers'
Compensation Appeal Board, dated October 28, 2016, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge