## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Rick Gring, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Workers' Compensation Appeal Board | : | |
| (Industrial Services, Inc.), | : | Nos. 1545 & 1546 C.D. 2016 |
| Respondent | : | Submitted: February 17, 2017 |

BEFORE:     HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE COVEY[1]                                        FILED: December 11, 2017

        Rick Gring (Claimant) petitions this Court for review of the Workers'
Compensation (WC) Appeal Board's (Board) August 26, 2016 order affirming the
Workers' Compensation Judge's (WCJ) decision denying Claimant's Petition to
Reinstate Benefits (Reinstatement Petition) and granting Industrial Services, Inc.'s
(Employer) Petition to Terminate Compensation Benefits (Termination Petition).
Claimant presents three issues for this Court's review: (1) whether the WCJ erred by
denying Claimant's Reinstatement Petition; (2) whether the WCJ erred by not
awarding Claimant litigation costs; and (3) whether the WCJ erred by not awarding
Claimant unreasonable contest attorney's fees.  After review, we affirm.

        On April 8, 2008 while working for Employer, Claimant was lifting a
beam to place it on a truck when he felt a crack in his right arm.  On April 18, 2008,

---

[1] This opinion was reassigned to the authoring judge on November 14, 2017.

Employer issued a Notice of Compensation Payable (NCP) accepting Claimant's work injury as a right arm bicep tendon tear. On November 10, 2008, the parties entered into a Supplemental Agreement suspending Claimant's WC benefits as of November 3, 2008, due to his return to work without a loss of earnings.

On July 21, 2010, Claimant sustained a second work-related injury when he was using a ratchet strap to tie down a generator on a flatbed trailer. On September 16, 2010, Employer issued an NCP accepting Claimant's work injury as a right shoulder partial tear of the supraspinatus tendon. On May 17, 2011, Employer issued a Notification of Suspension based upon Claimant's return to work without a loss of earnings. Claimant was laid off in February 2013 due to Employer closing its facility.

On November 4, 2014, Claimant filed a Reinstatement Petition alleging that his July 21, 2010 work injury was once again causing him to have a loss of earning power as of April 27, 2013. On April 7, 2015, Employer filed a Termination Petition alleging Claimant was fully recovered from his April 8, 2008 work injury as of September 9, 2014 or, alternatively, March 3, 2015. Employer specifically alleged that Claimant's medical expert, Raymond D. Dragann, D.O. (Dr. Dragann), opined that Claimant was fully recovered from the 2008 work injury. On April 16, 2015, Claimant filed an answer to the Termination Petition denying all material allegations.

The WCJ held hearings on December 17, 2014, February 20 and May 13, 2015. On September 11, 2015, the WCJ denied Claimant's Reinstatement Petition and granted Employer's Termination Petition. The WCJ concluded that Claimant failed to prove that his July 21, 2010 work injury was once again causing him to experience a loss of earning power. The WCJ further determined that Employer had met its burden of proving that Claimant was fully recovered from his April 8, 2008 work injury and terminated Claimant's benefits for that injury.

2

Claimant appealed to the Board. On August 26, 2016, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[2]

Claimant argues that his Reinstatement Petition should have been granted because his 2010 work-related injury currently prevents his return to his time-of-injury-job and, therefore, a loss of earnings capacity was established. We disagree.

This Court has explained:

> [A] claimant's earning power is once again adversely affected by the work injury, where a claimant returns to work with restrictions related to the injury (a modified position), and is subsequently laid off, a claimant is entitled to the presumption that the loss of earning power is causally related to the work injury. Stated differently, when a claimant does not return to his pre-injury job, and is then laid off from the modified duty job, the law presumes the layoff and attendant loss of earnings is attributable to the continued injury, shifting the burden to an employer to rebut the presumption.
>
> Conversely, **where a claimant returns to his pre-injury position, and works under a suspension without restrictions, and is *then* laid off, a claimant must affirmatively establish the work injury caused the loss of earnings**.

*Dougherty v. Workers' Comp. Appeal Bd. (QVC, Inc.),* 102 A.3d 591, 595 (Pa. Cmwlth. 2014) (citations omitted; emphasis added).

The law is well-established that neither the Board nor the Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001). This Court has continuously reaffirmed the principle:

---

[2] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014). Claimant is only appealing from the denial of his Reinstatement Petition.

> '[**I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ**; the critical inquiry is whether there is evidence to support the findings actually made.' [*Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.),* 873 A.2d 25, 29 (Pa. Cmwlth. 2005)] (quoting [*Del. Cty.*] *v. Workers' Comp. Appeal Bd. (Baxter Coles),* 808 A.2d 965, 969 (Pa. Cmwlth. 2002)). We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence.

*Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (citation omitted; emphasis added).

Claimant maintains that the testimony of Dr. Dragann and David L. Rubenstein, M.D. (Dr. Rubenstein) that as of September 9, 2014 and March 16, 2015, respectively, Claimant had restrictions when he returned to work; and Claimant's testimony that he could not do his job without help, implies that Claimant was performing a modified position when he returned to work. However, the facts as found by the WCJ do not support this implication.

> Here, the WCJ specifically found:
>
> With respect to the 2010 shoulder injury, . . . there is no dispute that when Claimant returned to work during May 2011 as a truck driver, [h]is pre-injury title, he was released by his treating doctor to perform his regular[-]duty work and there were no limitations of any kind placed upon Claimant's work duties by his doctor.

WCJ Dec. at 13-14. This finding is supported by Dr. Dragann's testimony. Specifically, Dr. Dragann testified:

> Q So after [Claimant] was released in November of 2008, you saw him on January of 2009, and at that time you indicated he could continue with full[-]duty work; correct?
>
> A Which was that date?

4

Q Let me show you your note, your office visit report from January 28th of 2008 following the January 27 – I'm sorry, 2009, following a January 27th office visit.

A Yes.

Q Okay. **And at that time, again, you indicated he could go back to full duty work**[?]

A **Yes**.

Reproduced Record (R.R.) at 122a (emphasis added). Dr. Dragann continued:

Q And then you saw [Claimant] about a week later on May the 3rd of 2011, and at that time you issued a Disability Certificate indicating he could return to his regular[-]duty work on May 17 of 2011; correct?

A Yes.

Q I'm showing you a . . . copy of the Disability Certificate of May 3rd, 2011, correct, Doctor?

A Yes.

Q Again, we can agree there are no limitations of any kind placed upon his work duties in that restriction or in that Disability Certificate; correct?

A Correct.

Q And is this a standard form that your office has available to generate from the computer for your ease and checking boxes to fill these things out quicker?

A Yes.

Q So it calls your attention to the areas of concern that you might have about releasing him to return to work following the types of injuries that he's had; correct?

A Yes.

Q And in scanning the available choices, there was nothing that jumped out to you as an area of concern to you; correct?

A No, **we released him to full duty**.

5

Q And your office notes don't indicate that he objected to the full[-]duty release at that time or indicated that he had concerns about what he could or could not do at work; is that correct?

A Correct.

R.R. at 124a-125a (emphasis added).

The WCJ also found "that Claimant was actually performing his job as a truck driver for Employer without any medical care or treatment from December 2011, through the time he was last employed by Employer." WCJ Dec. at 14. This finding is supported by the testimony of Dr. Dragann, *see* R.R. at 115a (wherein Dr. Dragann confirmed that he did not see Claimant from December 2011 until September 9, 2014), and Dr. Rubenstein. *See* R.R. at 208a (wherein Dr. Rubenstein testified the medical records he reviewed stopped in December 2011 and started again in 2014 when Dr. Dragann saw Claimant). Indeed, Dr. Rubenstein related:

> [Claimant] told me that he went back after his rotator cuff surgery about eight months or so post-op; maybe he went back a little bit too quick. But basically he went back to the same job, pretty much the exact same job without restriction. **He was working full duty when the plant shut down and had it not shut down he advised me he would still be working in the same capacity as to whatever he was doing before**.

R.R. at 209a-210a (emphasis added).

Finally, the WCJ expounded:

> [The WCJ] found, as a fact, that Claimant's treating doctor had released him to regular[-]duty work without restrictions. [Claimant's] doctor was well aware of Claimant's job duties having had discussed the same with Claimant and the doctor testified that he took into consideration those job duties when he authored the release to return to work.

WCJ Dec. at 17; *see also* R.R. at 127a (wherein Dr. Dragann confirmed that he "absolutely" "remember[ed] having a comprehensive discussion with [Claimant] about what his job required before [he] released him to full[-]duty work in May of 2011").

After a thorough review of the record, this Court concludes that the WCJ's findings of fact are supported by substantial evidence, the Board did not commit an error of law nor were Claimant's constitutional rights violated. Accordingly, the Board properly affirmed the WCJ's decision.[3]

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[3] Based upon our disposition of the first issue, we need not address Claimant's other issues.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rick Gring,                                     :
                         Petitioner             :
                                                :
             v.                                 :
                                                :
Workers' Compensation Appeal Board              :
(Industrial Services, Inc.),                    :    Nos. 1545 & 1546 C.D. 2016
                         Respondent             :

## O R D E R

AND NOW, this 11th day of December 2017, the Workers' Compensation Appeal Board's August 26, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rick Gring,                                   :
                    Petitioner                :
                                              :
          v.                                  :
                                              :
Workers' Compensation Appeal                  :
Board (Industrial Services, Inc.),            :    No. 1545 & 1546 C.D. 2016
                    Respondent                :    Submitted: February 17, 2017


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE                             FILED:  December 11, 2017


          In this matter, the Workers' Compensation Appeal Board (Board)
concluded Rick Gring (Petitioner) was not entitled to a presumption that his alleged
disability after being laid off from Industrial Services, Inc. (Employer) was causally
related to his work injury since he was not working under restrictions.  (Board's
Opinion at 7.)  The Board found Petitioner had returned to his pre-injury full-duty
job and that both Dr. Dragann and Dr. Rubenstein credibly testified that Petitioner
did not have restrictions due to his 2010 injury when Petitioner first returned to work
in 2011.  However, the Board also found there were many things Petitioner could
not do or needed help doing due to his 2010 injury.  Further, Employer did not have
job duty classifications that differentiated between regular and light duty.  (WCJ's
Decision at 15.)  Whether or not Petitioner was prescribed restrictions, these findings

imply modification of duties, "thus clouding the [Board's] analysis." *See Dougherty v. Workers' Compensation. Appeal Board (QVC, Inc.)*, 102 A.3d 591, 597 (Pa. Cmwlth. 2014). As the Majority does not adequately address this "clouding," I am compelled to dissent.

_____
JOSEPH M. COSGROVE, Judge
